No. 89-475

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

Plaintiff and Respondent,

-v-

SCOTT SOR-LOKKEN,

Defendant and Appellant.

FILED

DEC 18 1990

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Roger M. Kehew, Kalispell, Montana

For Respondent:

John Paulson, Asst. Atty. General, Helena, Montana
Robert Slomski, Sanders County Attorney, Thompson
Falls, Montana

Submitted on Briefs: November 1, 1990

Decided: December 18, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

In the District Court for the Twentieth Judicial District, Sanders County, defendant was convicted of two counts of felony assault. Defendant was sentenced to ten years for each count to be served concurrently, and determined to be a dangerous offender. Defendant appeals. We affirm.

We restate the issues presented as follows:

1. Did the District Court err in denying defendant's motion to dismiss for lack of justice court jurisdiction to issue an arrest warrant on a complaint charging a felony?

2. Was there a proper determination of probable cause?

3. Was the photo identification conducted by the State suggestive?

4. Did the District Court err in allowing the testimony of David Galarneau over defendant's objection?

5. Did the District Court err in denying defendant's motion for a new trial?

On July 12, 1988, defendant, Scott Sor-Lokken, and his family were traveling eastbound on State Highway 135 in defendant's sedan. Penny Shepard was also traveling eastbound on Highway 135 that afternoon on her way home to Kalispell.

Penny testified that she approached defendant's car from behind and attempted to pass it on the two-lane highway. Defendant refused to allow Penny to go around him or to return to her place behind him and held Penny in the oncoming traffic lane. As the two

2

cars continued down the highway side by side, defendant began to nudge Penny over in an attempt to run her into a concrete wall. While this occurred, a vehicle approached from the opposite direction. Penny slammed on her brakes and maneuvered behind defendant to avoid the oncoming vehicle. She then pushed her accelerator to the floor and managed to pass defendant.

After Penny passed the car, she looked in her rear view mirror and noticed a motorcycle for the first time. Monty McIlhargey (Monty) was driving the motorcycle and had witnessed the incident between Penny and defendant. He decided that the safest course of action was to pass defendant quickly, which he accomplished.

Monty testified that defendant caught up to him and bumped him from behind, then attempted to run him off the road. While defendant repeatedly attempted to run Monty off the road, one of defendant's passengers threw glass Orange Crush bottles at him. The bottles struck Monty and his motorcycle. Penny witnessed these events through her rear-view mirror.

At the next town, Paradise, Montana, Penny and Monty reported the incident to the Sanders County Sheriff's office. Penny and Monty provided the sheriff's office with defendant's personalized license plate inscription and gave general descriptions of defendant and his car.

The justice court in Sanders County issued an arrest warrant for defendant based upon a sworn complaint filed by the Sanders County Attorney. The complaint charged defendant with two counts

3

of felony assault in violation of §45-5-202(2), MCA. Defendant was arrested two days later and appeared before the justice court.

The State requested the District Court for leave to file an information. The motion was granted. The information filed charged defendant with two counts of felony assault. Defendant was arraigned on September 13, 1988, and entered a plea of not guilty to both counts. The District Court conducted the omnibus hearing on September 27, 1988.

On March 15, 1989, defendant filed a motion to exclude the testimony of the victims because of the alleged suggestiveness of the photographic lineup. He also filed a motion to suppress the arrest warrant, contending that the justice court lacked jurisdiction to issue the warrant in felony cases and that the examination of the complaint failed to establish probable cause. The District Court denied his motions.

On April 12, 1989, defendant moved to exclude the identification testimony of the witnesses, based upon the same grounds as the previous motions for the exclusion of witness testimony. The motion was denied.

The jury found defendant guilty on both counts of felony assault. Defendant filed a motion for a new trial. The District Court denied the motion. The District Court then sentenced defendant to ten years for each count of felony assault, to be served concurrently, and determined that defendant was a dangerous offender. Defendant appeals.

4

I

Did the District Court err in denying defendant's motion to dismiss for lack of justice court jurisdiction to issue an arrest warrant on a complaint charging a felony?

Defendant contends that a justice court cannot commence a felony by complaint. He contends that the procedure violates Article VII, Section 5, of the Montana Constitution which states:

> (2) Justice courts shall have such original jurisdiction as may be provided by law. They shall not have trial jurisdiction in any criminal case designated a felony except as examining courts.

The State urges that commencing a felony case by filing a complaint in a justice court is a procedure long accepted and practiced in Montana. The State cites State v. Snider (1975), 168 Mont. 220, 225, 541 P.2d 1204, 1207, for the rule that a justice court does not violate the original trial jurisdiction of district court when it exercises jurisdiction in the related nontrial proceedings of a felony prosecution. This Court stated:

> The use of the term "trial jurisdiction" constitutes a legislative acknowledgement that other types of jurisdiction exist in these cases and are not vested exclusively in the district courts.
> Montana's existing court system as established by the legislature supports a legislative intent to grant justices of the peace jurisdiction to issue search warrants. There are 56 counties in the state, with 28 district judges. These district judges serve judicial districts comprising from one to seven counties. They generally reside and spend the major part of their time in the most populous county within their judicial district. Because of this court system and its inherent geographical limitations, many of the outlying counties simply do not have a district judge available on a moment's notice to issue search warrants, . . . But . . . every county has one or more justices of the peace.

Under these known circumstances, the legislature will be presumed to have intended to grant justices of the peace the right to issue search warrants in the absence of any express limitation.

Snider, 541 P.2d at 225-226. In Snider, the defendant was charged with the felony of illegal possession of dangerous drugs. See also State v. Garberding, No. 90-128, slip op. (Mont. Nov. 26, 1990). We conclude that initiating a felony prosecution by complaint in the justice court is an established practice in Montana which is not prohibited by statute. We hold that the District Court correctly denied defendant's motion to dismiss for lack of justice court jurisdiction to issue an arrest warrant on a complaint charging a felony.

II

Was there a proper determination of probable cause?

Defendant maintains that the County Attorney was not examined under oath by the Justice of the Peace concerning probable cause to believe that defendant committed the crime. He contends that a verified complaint reciting the statute is not the same as probable cause being sworn to by oath or affirmation. He urges that the probable cause for his arrest must be reduced to writing. He further contends that since no one had actually identified the defendant for nearly a month, no evidence linking him with the alleged crime was found within a reasonable time. He argues that the circumstantial evidence pointed only to the vehicle involved as belonging to him, not as he being the one driving the vehicle.

The State maintains that the County Attorney was under oath

6

when he swore to the complaint. Sanders County Attorney, Bob Slomski, testified that Claude Burlingame, the County Attorney at the time of the incident, swore to the complaint when it was filed and recited the underlying facts relating to probable cause. It argues that the fact that the County Attorney was not under oath before reciting the facts supporting probable cause does not invalidate the arrest. The State further contends that the substantial rights of the accused are not at stake and the accused's right to counsel does not attach when the State applies for leave to file an information. It urges that a district court's finding of probable cause may be challenged in a subsequent motion to dismiss. Finally, the State maintains that defendant received an independent judicial determination of probable cause within a reasonable time. The complaint was filed on July 13, 1988. Sanders County deputies arrested defendant two days later, and defendant appeared in justice court that same day. The State applied to the District Court for leave to file an information on August 4, 1988, 20 days after the arrest, and filed the information on August 5, 1988.

Section 46-6-201, MCA, provides that an arrest warrant may be issued when a written complaint is presented to a court charging a person with the commission of an offense and the court examines the complainant under oath to determine if there is probable cause for the arrest. Article II, Section 11 of the 1972 Montana Constitution requires probable cause supported by oath or

affirmation reduced to writing.

The Supreme Court of the United States has held that the issue in warrant proceedings is not guilt beyond a reasonable doubt but probable cause for believing that a crime has occurred. United States v. Harris (1971), 403 U.S. 573, 581-583; State v. Garberding, 47 St.Rep. at ____. As the State maintains, that standard was met by the witness statements describing defendant and defendant's license plate. Even if the defendant's arrest had been unlawful, an illegal arrest has no impact on subsequent prosecution using evidence not tainted by illegality. State v. Woods (1983), 203 Mont. 401, 662 P.2d 579; State v. Ellinger (1986), 223 Mont. 349, 725 P.2d 1201.

Defendant does not have a right to be present when the State applied for permission to file an information. This Court has held that a defendant's right to counsel was not violated because counsel was not appointed until after the information was filed. State v. Farnsworth (1989), 240 Mont. 328, 333, 783 P.2d 1365, 1367.

Finally, §46-7-103, MCA, requires the preliminary examination to be held within a reasonable time unless the district court grants leave to file an information. Here, the court made an independent determination of probable cause and granted the State leave to file an information. The State continued to investigate and prepare the case by conducting a photo array and examining the crime scene. Defendant remained incarcerated during that time.

8

When a defendant remains incarcerated because he cannot meet bail, his incarceration is not a factor in calculating reasonable time. Farnsworth, 783 P.2d at 1368. We hold that there was a proper determination of probable cause and no rights of the defendant were violated.

III

Was the photo identification conducted by the State suggestive?

Defendant maintains that the photographic line-up was unreasonably suggestive. The State maintains that the photograph was not suggestive and did not deny defendant due process.

The Sanders County Attorney conducted a photographic lineup using a photograph of defendant taken while he was incarcerated. He was not wearing a shirt in the photo. The victims, Penny and Monty, each separately identified defendant. Later each made in-court identifications of the defendant as well.

The test for whether the identification procedure was suggestive or not has been defined by this Court. A two-pronged test determines whether or not the identification should be suppressed:

> First, was the identification procedure impermissibly suggestive; and, second, if so, did it under the totality of the circumstances have such a tendency to give rise to a substantial likelihood of irreparable misidentification.

State v. Higley (1980), 190 Mont. 412, 621 P.2d 1043. The only way the identification here could be deemed suggestive is by the

mere fact that defendant was the only man in the photographic line-up that was not wearing a shirt. Examination of the photographs does not indicate that fact was suggestive.

Looking at the second leg of the test, the totality of the circumstances, we conclude that the identification was reliable even if the identification procedure were considered suggestive. The facts to be considered in evaluating the likelihood of misidentification include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. (Citations omitted.)

State v. Higley, 621 P.2d at 1049.

Both witnesses here were victims who viewed the defendant during the crime. Both witnesses separately positively identified the defendant both from the photographic array and in court. The identification with the photo array took place only two weeks after the crime. We hold that the photo identification conducted by the State was not suggestive.

IV

Did the District Court err in allowing the testimony of David Galarneau over defendant's objection?

Defendant maintains that the District Court erred in allowing the testimony of David Galarneau over his objection. Mr. Galarneau is the automobile mechanic who worked on the alleged vehicle used

10

in the crime, and testified as to its condition as it existed prior to the incident in question. During cross-examination, the State inquired as to Mr. Galarneau's failure to appear the day before. The testimony relevant to this issue follows.

Q. You got a subpoena to be in court here?

A. Yes.

Q. The subpoena told you to be here yesterday morning; is that true?

A. I never got that one. I had one before I was suppose to have been here a couple weeks ago or something.

Q. Okay. Where were you yesterday?

Defense Counsel: Objection your Honor. I don't see that it's relevant.

The Court: Overruled.

Q. Where were you yesterday?

A. Lake County Jail.

The State maintains that this line of questioning was used to show the witness failed to respond to a previous subpoena which went to his credibility. It maintains that a question of credibility is a matter for the jury to decide. The State urges the defendant objected on grounds of relevancy, and the objection was properly overruled since the questioning was relevant and was not character evidence. No mention of an arrest or a conviction was made. Defendant did not move to strike.

Evidentiary rulings concerning the admissibility of evidence are within the District Court's discretion and will not be disturbed absent a showing of an abuse of discretion. The

presumption that a witness speaks the truth and is credible can be rebutted by evidence of the witness' character for truth, honesty, and integrity, but evidence bearing on issues of witness' credibility, in order to be admissible, must be more probative than prejudicial. State v. Hammer (1988), 233 Mont. 101, 759 P.2d 979.

The District Court must balance prejudice and probative value. Evidence of Mr. Galarneau's failure to answer his subpoena by appearing the previous day does not tend to make any fact at issue in this action more or less probable than that fact would be without the evidence. Thus, defendant has failed to show any abuse in the District Court's discretion that the testimony of Mr. Galarneau was more prejudicial than probative. We hold that the District Court did not err in allowing the testimony of David Galarneau over defendant's objection.

V

Did the District Court err in denying defendant's motion for a new trial?

Defendant maintains that he was entitled to a new trial pursuant to §§ 46-16-701 and 46-16-702, MCA. The State filed an answer stating that defendant failed to file a supporting brief pursuant to Uniform District Court Rule 2, which provides that failure to file a brief within five days subjects the moving party to a summary ruling. The court denied defendant's motion.

Defendant argues that a denial of his motion based on Rule 2 was erroneous because Rule 2 does not apply to criminal cases.

12

The State contends that the decision to deny the motion is a matter of trial court discretion and shall not be disturbed absent an abuse of judicial discretion. The State also urges that defendant's motion for a new trial was untimely under § 46-16-702(2), MCA.

Defendant failed to provide the District Court with sufficient information to support his motion for a new trial. We conclude the District Court did not abuse its discretion. We hold that the District Court did not err in denying defendant's motion for a new trial.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 89-475

STATE OF MONTANA,

Plaintiff and Respondent,

-v-

SCOTT SOR-LOKKEN,

Defendant and Appellant.

)
)   O R D E R
)



FILED

JAN 4 - 1991

IT IS ORDERED that this Court's opinion in the above case dated December 18, 1990, which reads on the bottom of page 6 and the top of page 7 as follows:

> The State maintains that the County Attorney was under oath when he swore to the complaint. Sanders County Attorney, Bob Slomski, testified that Claude Burlingame, the County Attorney at the time of the incident, swore to the complaint when it was filed and recited the underlying facts relating to probable cause. It argues that the fact that the county attorney was not under oath before reciting the fats supporting probable cause does not invalidate the arrest. The State further contends that the substantial rights of the accused are not at stake and the accused's right to counsel does not attach when the State applies for leave to file an information. It urges that a district court's finding of probable cause may be challenged in a subsequent motion to dismiss. Finally, the State maintains that defendant received an independent judicial determination of probable cause within a reasonable time. The complaint was filed on July 13, 1988. Sanders County deputies arrested defendant two days later, and defendant appeared in justice court that same day. The State applied to the District Court for leave to file an information on August 4, 1988, 20 days after the arrest, and filed the information on August 5, 1988.

shall be changed to read:

> The State maintains that the County Attorney was under oath when he swore to the complaint. Justice of the Peace Beitz, testified that Claude Burlingame, the County Attorney at the time of the incident, swore to the

complaint when it was filed and recited the underlying facts relating to probable cause. It argues that the fact that the county attorney was not under oath before reciting the fats supporting probable cause does not invalidate the arrest. The State further contends that the substantial rights of the accused are not at stake and the accused's right to counsel does not attach when the State applies for leave to file an information. It urges that a district court's finding of probable cause may be challenged in a subsequent motion to dismiss. Finally, the State maintains that defendant received an independent judicial determination of probable cause within a reasonable time. The complaint was filed on July 13, 1988. Sanders County deputies arrested defendant two days later, and defendant appeared in justice court that same day. The State applied to the District Court for leave to file an information on August 4, 1988, 20 days after the arrest, and filed the information on August 5, 1988.

DATED this 4th day of January, 1991.

_____
                    Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
            Justices