No. 96-046

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MARTIN ROMANNOSE,

Defendant and Appellant.



APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell C. Fagg, Judge presiding.



COUNSEL OF RECORD:

For Appellant:

Mark T. Errebo, Deputy Public Defender, Billings,
Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer
Anders, Assistant Attorney General, Helena, Montana;
Dennis Paxinos, Yellowstone County Attorney, Dale
Mrkich, Deputy Yellowstone County Attorney,
Billings, Montana

Submitted on Briefs: July 11, 1996

Decided:   January 17, 1997
                    Filed:


_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.


Defendant Martin Romannose (Martin) appeals from a judgment and commitment entered in the Thirteenth Judicial District Court, Yellowstone County, imposing a five-year sentence at the Montana State Prison upon his conviction for felony escape.  We affirm.

We restate the following issues on appeal:

1.   Did the District Court properly deny Martin's motion for a directed verdict?

2.   Did the District Court err in admitting the State's exhibits into evidence?

3.   Did the State's questions and closing argument impermissibly shift the burden of proof to Martin?

4.   Did the District Court properly sentence Martin under 45-7-306, MCA?

FACTUAL AND PROCEDURAL BACKGROUND

Defendant Martin Romannose (Martin) began serving a ten-year plus a three-year consecutive sentence at the Montana State Prison on February 6, 1991.  In August 1992, Martin was paroled, but returned to the Montana State Prison in April 1993 due to a parole violation.  His parole was subsequently revoked.  Later in 1993, Martin was transferred to a pre-release facility, known as Alpha House, located in Billings, Montana.  Alpha House is a facility for inmates of the Montana State Prison or a federal penitentiary who are working toward probation or parole status.  Alpha House is administered by a private corporation known as Alternatives, Inc.

Before entering Alpha House, Martin signed a pre-release referral form whereby he acknowledged that he was a Montana State Prison inmate and that any unauthorized absence from Alpha House constituted felony escape carrying a ten-year consecutive sentence.  Additionally, in the recommended case disposition from the Board of Pardons, Martin signed a statement that he understood he was subject to "official detention" until paroled.  In February 1994, the Board of Pardons conditionally granted Martin parole upon successful completion of pre-release.  However, Martin did not complete this condition because of the incident at issue.

While at Alpha House, Martin was approved for "live-out"

status which allowed him to maintain his own residence while still being subject to the same conditions as if he were residing at Alpha House. That is, Martin was still required to check into Alpha House once a day and abide by its rules such as urinalysis and alcohol testing. On April 9, 1994, Martinþs employer sent him home from work for drinking on the job. Alpha House personnel were informed of this incident, checked up on Martin at his residence and conducted a breathalyser test. Later that same day, they conducted another breathalyser test on Martin at the Alpha House. Both tests were positive for alcohol consumption.

Alpha House immediately made arrangements to transport Martin to jail, and, while such arrangements were in progress, Martin walked away from Alpha House without permission. Not until May 16, 1994, was Martin finally found and arrested in Spokane, Washington and eventually returned to Montana. Martin was charged by information with felony escape pursuant to  45-7-306, MCA, in the Thirteenth Judicial District Court, Yellowstone County. On October 25, 1995, after a jury trial, Martin was convicted of the charge. On November 21, 1995, the District Court sentenced Martin to five years imprisonment at the Montana State Prison to run consecutively with his current sentence. From this judgment and commitment, Martin appeals. We affirm.

## DISCUSSION

1. Did the District Court properly deny Martin's motion for a directed verdict?

At the close of the evidence, Martin moved for a directed verdict based on the grounds that the State failed to prove the two essential elements of felony escape as defined in  45-7-306, MCA: (1) Defendant was subject to "official detention" and (2) Defendant acted purposely or knowingly. The District Court denied Martin's motion.

Section 46-16-403, MCA, allows a trial court to direct a verdict of acquittal and dismiss a criminal charge at the close of the evidence when the evidence is insufficient to support a guilty verdict. State v. Johnson (1996), 276 Mont. 447, 450, 918 P.2d 293, 294. We review a trial court's denial of a motion for a directed verdict to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson, 918 P.2d at 294. Because a district court's decision to direct a verdict at the close of the State's case lies within the sound discretion of the district court, it will not be disturbed on appeal absent an abuse of that discretion. State v. Mummey (1994), 264 Mont. 272, 276, 871 P.2d 868, 870.

Martin argues that the State failed to present any evidence that he was subject to "official detention" and that he acted purposely or knowingly. Martin contends that he presented evidence that he was not subject to "official detention," but rather was on

parole status, and, therefore, the District Court should have granted his motion for directed verdict. The State responds that it presented evidence showing that Martin was subject to "official detention" and that this evidence was sufficient to withstand Martin's motion for a directed verdict.

Under 45-7-306(1), MCA, "official detention" is defined to include "placement in a community corrections facility or program." Alpha House, as a pre-release center, is a "community corrections facility or program." See State v. Chandler (1996), 922 P.2d 1164, 1166, 53 St.Rep. 774, 776. Therefore, as a resident of Alpha House, Martin was subject to "official detention."

Martin contends that the State did not present evidence that while on "live-out" status with Alpha House, he was still involved in a community corrections program as contemplated by 45-7-306(1), MCA. However, we note that despite Martin's "live-out" status, the evidence shows he was still considered a resident of Alpha House and subject to its rules, including checking into Alpha House once a day and submitting to periodic urinalysis and alcohol testing. Consequently, the evidence shows that Martin was involved with a "community corrections facility or program" and was thereby subject to "official detention."

Martin also asserts that he was a parolee at the time he left Alpha House, and, consequently, he was not subject to "official detention" as defined by 45-7-306(1), MCA. However, no evidence in the record supports this conclusion. In fact, all evidence points to the contrary--that Martin was on inmate status and under "official detention" as a resident of Alpha House. Specifically, prior to his placement at Alpha House, Martin signed a pre-release referral form whereby he acknowledged that any unauthorized absence on his part from Alpha House would constitute felony escape. Furthermore, Martin signed a recommended case disposition from the Board of Pardons acknowledging that he was subject to "official detention" until the Board of Pardons formally approved him for parole.

Finally, Martin argues that the State failed to prove that he acted "knowingly or purposely" when he left Alpha House and thereby removed himself from official detention. We find this argument unpersuasive. The documentation offered by the State clearly shows that Martin was aware that he was subject to "official detention" while a resident of Alpha House and that any unauthorized absence on his part constituted felony escape.

Thus, we conclude that the State presented sufficient evidence concerning Martin's "official detention" and his mental state to allow this case to be submitted to the jury. Furthermore, we conclude that the District Court did not abuse its discretion in denying Martin's motion for directed verdict. Accordingly, we hold that the District Court properly denied Martin's motion for directed verdict.

2.    Did the District Court err in admitting the State's exhibits into evidence?

The State offered three exhibits into evidence through one witness who worked as Martin's case manager at Alternatives, Inc. Exhibit 1, dated February 22, 1994, was a "Recommended Case Disposition" from the Montana Board of Pardons, prepared and signed by Jeff Walters, the executive secretary of the Board of Pardons. Additionally, Exhibit 1 contained a statement signed by Martin indicating that he understood he was subject to "official detention" until paroled.  Exhibit 2, dated February 24, 1994, was a "Case Disposition" signed by two members of the Montana Board of Pardons.  Both exhibits showed that the Board of Pardons granted Martin parole subject to  completion of certain special conditions, including completion of pre-release.  Exhibit 3, dated June 7, 1993, was a "Pre-Release Referral" form prepared by Alternatives, Inc. and signed by Martin.  Exhibit 3 contained a statement signed by Martin wherein he acknowledged that he was a Montana State Prison inmate while at the pre-release facility and that any unauthorized absence on his part constituted felony escape, carrying a 10-year consecutive sentence.  Martin objected to the introduction of all three exhibits into evidence on the grounds that the documents were hearsay and without foundation.  The District Court admitted all three exhibits under Rule 803(6), M.R.Evid., the business records exception to the hearsay rule.

Martin argues that the District Court improperly admitted the State's exhibits into evidence under Rule 803(6), M.R.Evid.  Martin contends that because the exhibits are from a public office or agency, they are potentially admissible only under Rule 803(8), M.R.Evid., the public records and reports exception to the hearsay rule.  Yet, Martin asserts that while Rule 803(8), M.R.Evid., provides an exception to the hearsay rule, it also states that "factual findings offered by the government in criminal cases" are not within this exception to the hearsay rule.  Martin argues that because the State's exhibits constitute such "factual findings" under Rule 803(8), M.R.Evid., they would not qualify for admission into evidence under this exception to the hearsay rule either.  Martin concludes that as stated in United States v. Cain (5th Cir. 1980), 615 F.2d 380, 382, "statements inadmissible as public agency reports under Rule 803(8) may not be received merely because they satisfy Rule 803(6)[;] . . . section (6) does not open a back door for evidence excluded by section (8)."

The State responds that while its witness did not personally prepare the documents, the proper foundation was laid for the exhibits to be introduced into evidence.  Specifically, Martin's caseworker testified that he had personal knowledge of the facts contained in the documents and that the documents were prepared contemporaneously with those facts by a person with a business relationship with Alternatives, Inc.  Furthermore, Martin's

caseworker testified that it was routine practice in the business to prepare these documents and the documents were prepared in the regular course of business. Therefore, the State argues that the District Court properly admitted the exhibits under Rule 803(6), M.R.Evid., because the exhibits clearly qualified as records of regularly conducted business activities.

We conclude that Martin's argument is unpersuasive. Martin provides absolutely no explanation as to why the State's exhibits were not admissible under Rule 803(6), M.R.Evid. Our standard of review concerning a district court's evidentiary rulings is whether the district court abused its discretion. State v. Ford (1996), 926 P.2d 245, 249-50, 53 St.Rep. 947, 950. Upon our review of the record, we conclude that the State laid the proper foundation for the District Court to admit all three exhibits under Rule 803(6), M.R.Evid., the business records exception to the hearsay rule. Accordingly, we hold that the District Court did not abuse its discretion by admitting the State's exhibits into evidence.

3. Did the State's questions and closing argument impermissibly shift the burden of proof to Martin?

Martin contends that the State impermissibly shifted the burden of proof to Martin when the State asked questions of its witnesses regarding Martin's "inmate status," and thereby implied that the State need only prove that Martin was an "inmate" as opposed to proving that Martin was subject to "official detention." Martin also claims that the State's closing argument was improper because the State suggested that Martin had to prove that he was on parole, and, consequently, was not subject to "official detention."

The State responds that Martin failed to make any objections during the trial concerning the State's questions or closing argument, and, therefore, Martin did not properly preserve this issue for appeal under 46-20-701, MCA. However, after reviewing the record, we note that Martin, in fact, did make objections during and at the end of the State's closing argument concerning this issue raised on appeal. Therefore, because Martin made timely objections during trial, we will discuss the merits of this issue.

The State further responds that the jury was instructed that it must find Martin was subject to "official detention" to warrant a conviction and that the State in no way attempted to shift the burden of proof to Martin. The State maintains that the evidence it presented was sufficient to allow the jury to conclude that because Martin was placed at the Alpha House, a community corrections facility, he was subject to "official detention" at the time of his escape. Furthermore, the State contends that any testimony from its witnesses concerning Martin's inmate status was relevant to refute Martin's claim that he was on parole at the time of his escape. Finally, the State argues that during closing argument, it accurately stated the law and never suggested that the

jury could find Martin guilty of felony escape merely because he was on "inmate status."

Upon consideration of the parties' arguments, we note that this case was tried and argued prior to our decision in Chandler. In Chandler, we affirmed a District Court's denial of a defendant's motion to dismiss which was based on its conclusion of law that because the defendant was subject to "official detention," the State could prosecute him for felony escape under 45-7-306, MCA. Chandler, 922 P.2d at 1165-66. We explained that Chandler's conduct would only constitute escape, as proscribed by 45-7-306, MCA, if the State could prove that Chandler knowingly or purposely removed himself from or failed to return to "official detention" as defined in 45-7-306(1), MCA. Chandler, 922 P.2d at 1165. Thus, the main issue in Chandler was whether Chandler's placement in a pre-release center constituted "official detention" as defined under 45-7-306(1), MCA. After reviewing certain provisions of the Montana Community Corrections Act, Title 53, Chapter 30, part 3, MCA, we concluded, as a matter of law, that a pre-release center was a "community corrections facility or program," and, therefore, Chandler's placement in the Butte Pre-release Center constituted "official detention" under 45-7-306(1), MCA. Chandler, 922 P.2d at 1166.

In the present case, the record reflects that the State presented more than sufficient evidence to prove that Martin was a resident of a pre-release center known as Alpha House, and, therefore, was subject to "official detention" under 45-7-306(1), MCA. See Chandler, 922 P.2d at 1166. Consequently, whether Martin was also considered to be on "inmate status" was never an issue in this case. Furthermore, the records shows that the State did not misstate the law in its closing argument and that the jury was properly instructed. Accordingly, we hold that the State's questions and closing argument in no way shifted the burden of proof in this case to Martin.

4. Did the District Court properly sentence Martin under 45-7-306, MCA?

Martin argues that the District Court improperly sentenced him to five years at the Montana State Prison pursuant to the felony provision of 45-7-306(3)(b)(i), MCA. Martin contends that the District Court should have sentenced him under the misdemeanor provision of 45-7-306(3)(c), MCA. Martin asserts that the facts surrounding his alleged escape do not meet the requirements set forth under 45-7-306(3)(b)(i), MCA. Therefore, relying on State v. Nelson (1996), 275 Mont. 86, 910 P.2d 247, Martin maintains that the District Court was precluded from sentencing him for a felony offense.

The State responds that Martin ignores the evidence showing that Alpha House is a community corrections facility or program and that Martin, as a resident there, was subject to "official

detention." Furthermore, the State argues that Martin does not explain why Alpha House does not fall within  45-7-306(3)(b)(i), MCA, or why Nelson is controlling. We agree.

As we discussed in Chandler, the facts of the case before us are distinguishable from Nelson. See Chandler, 922 P.2d 1166-67. In Chandler, we explained that because the facts in Nelson did not comport with the plain language of  45-7-306(3)(b)(i), MCA, the inmates' escape did not qualify as a felony offense. Chandler, 922 P.2d at 1167. That is, a Montana State Prison inmate who escapes from a work assignment at the Deer Lodge Golf Course is guilty only of misdemeanor escape because the golf course is not one of the institutions or facilities listed in the felony escape provisions of  45-7-306, MCA. Here, however, Martin's conduct, like Chandler's, clearly falls within the plain language of  45-7-306(3)(b)(i), MCA, which provides:

A person convicted of the offense of escape shall be . . . imprisoned in the state prison for a term not to exceed 10 years if he has been charged with or convicted of a felony and escapes from a . . . community corrections facility or program. . ..

As we determined in Issues 1 and 3, Alpha House is a community corrections facility and Martin, as an Alpha House resident, was subject to "official detention." Furthermore, the evidence shows that on April 9, 1994, Martin, a convicted felon, left Alpha House without permission and thus committed the offense of felony escape. See  45-7-306(2) and (3)(b)(i), MCA. The jury found Martin guilty of felony escape and the District Court sentenced him to five years at the Montana State Prison pursuant to  45-7-306 (3)(b)(i), MCA.

We review sentences for legality only. State v. Graves (1995), 272 Mont. 451, 463, 901 P.2d 549, 557 (citing State v. Cope (1991), 250 Mont. 387, 399, 819 P.2d 1280, 1287). A sentence is legal if it falls within the range prescribed by the statute. Graves, 901 P.2d at 557. Here, the sentence imposed by the District Court falls within the range set forth in  45-7-306(3)(b)(i), MCA (allowing for a maximum ten-year prison term). Accordingly, we hold that the District Court properly sentenced Martin under  45-7-306(3)(b)(i), MCA. To the extent that Martin's complaints concern the equity of his sentence, those must be addressed to the Sentence Review Division. Graves, 901 P.2d at 557 (citing State v. Lloyd (1984), 208 Mont. 195, 199, 676 P.2d 229, 231).

Affirmed.

/S/  JAMES C. NELSON

We Concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART
/S/  KARLA M. GRAY