No. 97-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 200

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DONALD AHTO,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carrie L. Garber, Deputy Public Defender, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General

C. Mark Fowler, Ass't Attorney General, Helena, Montana

No

Submitted on Briefs: May 28, 1998

Decided: August 13, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **Donald Ahto (Ahto) appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, convicting him of one count of felony assault and one count of sexual intercourse without consent. Ahto contends that the District Court violated his constitutional right to confrontation by improperly excluding evidence pursuant to § 45-5-511(2), MCA, Montana's rape shield statute. Ahto asserts that he was denied his right to a fair trial as a result of improper comments by the prosecutor. In addition, Ahto contends that he was prejudiced by the State of Montana's (State's) failure to disclose medical documents until after the trial. Finally, Ahto maintains that the State failed to establish that a clipper cord is a "weapon" within the meaning of § 45-2-101(76), MCA. Ahto seeks a new trial as relief. We affirm the decision of the District Court.**

Factual and Procedural Background

¶ January 22, 1996, was a cold day and Ahto and his live-in girlfriend, T.G., stayed in their apartment and watched television together most of the day. At approximately 8:30 p.m., T.G. decided to go to the Lobby Liquor Lounge (the Lobby) where she frequently hung out. The Lobby was only a couple of blocks from their apartment, so T.G. walked. T.G. testified that when she arrived at the Lobby she recognized two of her friends, Chuck and Krista. T.G. had a few beers while she talked with her friends. Around 11:00 p.m., T.G. called Ahto from the Lobby to tell him that she would be home soon.

¶ Around 1:30, the bartender indicated that he was getting ready to close the bar so Chuck and Krista offered T.G. a ride home. They stopped at the Holiday Store to purchase some cigarettes and T.G. called Ahto again from the store indicating that she was on her way home and asking if Ahto needed anything from the store.

¶ T.G. testified that she arrived at home at about 2:15 a.m. and Ahto was waiting for her sitting in a chair in the kitchen. T.G. said that when she entered the door she could tell by Ahto's facial expressions that he was angry with her. Ahto asked "Where the hell have you been?" When he found out that Chuck and Krista gave her a ride home, Ahto became enraged because T.G. was in a black man's car. He then grabbed T.G., threw her across the room and began hitting her repeatedly in the face and chest.

¶ Ahto told T.G. to take her clothes off. T.G. testified that she was frightened by Ahto's conduct and decided to comply. As she was standing undressed, Ahto grabbed a set of electric clippers and began whipping T.G. across the back with the cord. Ahto then had T.G. get on the bed "on all fours." Ahto had anal intercourse with T.G. three times without her consent. T.G. testified that throughout the episode, which lasted approximately two hours, Ahto continued to beat her with the cord and his fists. Ahto and T.G. fell asleep around 6:30 a.m. T.G. testified that she did not try to flee while Ahto was sleeping because she was afraid she would wake him and he would be angry.

¶ Ahto, on the other hand, testified that T.G. did not arrived home until approximately 4:00 a.m. and that he was asleep in the chair waiting for her. Ahto explained that he was upset with T.G. because they had an on-going disagreement about T.G.'s cocaine habit and her prostituting herself to obtain drug money. Ahto testified that, after T.G. called at 2:15 a.m., he had received another phone call from

an individual who deals drugs at the Parkway Motel who indicated that T.G. had been there.

¶ Ahto testified that when T.G. entered the apartment, he noticed that her chin looked somewhat bruised, but that he was not concerned because she often came home with bruises from prostituting. In addition, Ahto indicated that he believed T.G. was under the influence of drugs. Ahto said that T.G. knew he was upset and was trying to make up with him by kissing him. He said that he pushed her away causing her to fall onto the couch. Ahto testified that they then engaged in consensual anal sex in the missionary position at T.G.'s request. Ahto explained that T.G. was often willing to have anal intercourse when she knew Ahto was mad at her. Ahto testified that he did not rape T.G., he did not hit her with a cord, and he did not hit her in the face.

¶ At trial, Ahto and T.G.'s next door neighbor, Keith White, testified to his recollection of the events of January 22-23, 1996. Mr. White said he went to bed at approximately 11:00 p.m. on January 22nd and that he was awakened in the middle of the night to the sound of screaming from Ahto and T.G.'s apartment. Mr. White explained that the walls in the Darryl Apartments are very thin because it is an old building. In addition, Mr. White's bed shared the same wall as the Murphy style bed in Ahto and T.G.'s apartment. Mr. White testified that he heard T.G. screaming in "sheer terror" and indicated that the screaming, crying and sounds of someone being hit lasted for several hours and would occur in approximately 20 minute intervals. Mr. White recalls looking at his clock right before he fell back to sleep, it was about 4:30 a.m. He testified, however, that he did not intervene or call the police because he does not have a telephone in his apartment. In addition, Mr. White explained that the only pay phone is at a restaurant across the street and because of his disability, it takes him two hours to dress himself. He believed that the incident would be over before he could summon help. Finally, Mr. White explained that several incidents have taken place at the Darryl Apartments and he has learned that it is better not to get involved. Mr. White did not want to become "another victim."

¶ The next morning Ahto arose first and went to collect some boxes. Ahto and T.G. had been evicted from their apartment and they had to move out that day. When Ahto returned he woke T.G. and they began packing. T.G. explained that she did not feel that she had an opportunity to leave or call anyone for help during that time. They moved their boxes across the hall to Ron Danford's (Danford's) apartment at

about 5:00 p.m. Danford made a comment about T.G.'s bruises and Ahto explained that he had to give her a "whooping" because she had been out late the night before. Danford then told Ahto that he should not treat his girlfriend so badly if he loves her. To which Ahto replied if you (Danford) want to, "you take care of her." Ahto then left Danford's apartment in anger. After Ahto left, T.G. showed Danford her injuries. Danford called 911 and an ambulance was dispatched to the Darryl Apartments shortly thereafter. T.G. was treated by emergency medical personnel for pain and severe bruising to her jaw, her facial region and her scalp, bruising around her eyes, and bruising with linear marks through it in the thoracic region and on her arms and legs. James Evan Buchan, M.D., testified that T.G.'s injuries were consistent with her interpretation of the events. In addition, a rectal examination revealed four small tears to T.G.'s anus consistent with forced entry of the anus.

¶ Ahto was charged with three counts of felony assault and one count of sexual intercourse without consent. Prior to trial, the State moved in limine pursuant to § 45-5-511(2), MCA, to exclude any evidence of T.G.'s prior sexual conduct. The District Court granted the State's motion prohibiting prior sexual conduct evidence, including evidence regarding T.G.'s involvement in prostitution, during the State's case-in-chief and during cross-examination of T.G. The District Court, however, denied any limitations on the scope of Ahto's defense and, therefore, allowed Ahto to testify about T.G.'s involvement in prostitution during the defense's case-in-chief. Following trial, the jury found Ahto guilty of one count of felony assault and one count of sexual intercourse without consent. Shortly after trial, Ahto moved for a new trial. The District Court denied Ahto's motion. Ahto appeals to this Court. We address four issues on appeal:

¶ 1) Did the District Court abuse its discretion in granting the State's motion in limine pursuant to § 45-5-511(2), MCA, precluding Ahto from cross-examining T.G. about her involvement in prostitution?

¶ 2) Did the District Court abuse its discretion in denying Ahto's motion for mistrial following improper comments by the prosecutor during closing argument?

¶ 3) Did the District Court abuse its discretion in denying Ahto's motion for a new trial based on the alleged failure of the State to disclose a medical report until after the trial?

**¶ 4) Did the District Court abuse its discretion in denying Ahto's motion for directed verdict for failure of the State to establish that the clipper cord constituted a weapon in accordance with § 45-2-101(76), MCA?**

I

**¶ 1) Did the District Court abuse its discretion in granting the State's motion in limine pursuant to § 45-5-511(2), MCA, precluding Ahto from cross-examining T.G. about her involvement in prostitution?**

**¶ The Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee a criminal defendant the right to confront witnesses. This right, however, is not absolute. The United States Supreme Court has established that state rules excluding evidence from criminal trials do not abridge a defendant's right to present a defense so long as the rule is not arbitrary or disproportionate to the purpose it is designed to serve. State v. Johnson, 1998 MT 107, ¶22, ___ P.2d ___, ¶22, 55 St.Rep. 408, ¶22 (citing United States v. Scheffer (1998), ___ U.S. ___, 118 S.Ct. 1261, ___ L.Ed.2d ___). Montana's rape shield law, § 45-5-511(2), MCA, provides that, with certain limitations, no evidence concerning the sexual conduct of the victim is admissible in a case involving a sexual crime. This Court has held that the State has a compelling interest in preventing rape trials from becoming a trial on the victim's prior sexual conduct and thus has repeatedly upheld the rape shield law against Sixth Amendment attacks. See Johnson, ¶22; State ex rel. Mazurek v. Dist. Court of Fourth Jud. Dist. (1996), 277 Mont. 349, 922 P.2d 474; State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193.**

**¶ Speculative or unsupported allegations are insufficient to tip the scales in favor of a defendant's right to present a defense and against the victim's rights under the rape shield statute. Johnson, ¶24 (citations omitted). In reviewing a district court's decision regarding the admissibility of evidence relating to the extrinsic sexual conduct of sexual assault victims under § 45-5-511, MCA, we determine whether the district court abused its discretion. Mazurek, 277 Mont. at 353, 922 P.2d at 477. Ahto asserts that the District Court's granting of the State's motion in limine pursuant to § 45-5-511(2), MCA, limiting evidence of T.G.'s involvement in prostitution, violates his constitutional right to confrontation. Therefore, we review the District Court's decision limiting evidence of T.G.'s involvement in prostitution to determine whether the District Court abused its discretion.**

¶ Ahto points to two alleged errors in the District Court's order granting the State's motion in limine prohibiting Ahto from cross-examining T.G. regarding her involvement in prostitution: First, Ahto maintains that he should have been able to cross-examine T.G. regarding prostitution because evidence of prostitution established his defense to the felony assault charges. Second, Ahto contends that the State "opened the door" to the issue of prostitution by eliciting testimony from T.G. regarding her employment at the time of the alleged assault.

¶ As to Ahto's first assertion, Ahto maintains that T.G., due to her involvement in prostitution, routinely came home late at night with bruises. Ahto claims that he sought to introduce evidence of T.G.'s prostitution to show that the night of January 22 was no different than any other night, that he did not have any reason to be upset about T.G. returning home late, and that T.G. was likely injured by someone other than him. Ahto claims that because he was precluded from cross-examining T.G. regarding prostitution, he was not able to present a defense to the felony assault charge.

¶ The record, however, reveals that at trial it was Ahto's contention that T.G. was assaulted as a result of an outstanding debt or possibly in a bar fight. Ahto did not contend, as he does now, that T.G. was injured as a result of her involvement in prostitution. Not only is Ahto presenting this argument for the first time on appeal, but we determine that it is unsupported and speculative. Ahto did not offer any evidence that T.G. had been beaten by someone else, nor did he present any witnesses to that effect. Ahto offers nothing more than an unsubstantiated allegation that T.G. has, in the past, come home with injuries as a result of prostitution. Speculative or unsupported allegations are insufficient to tip the scales in favor of allowing a defendant to present a defense based on prior sexual conduct of the victim. Johnson, ¶24. Therefore, we hold that the District Court did not err in limiting evidence of prostitution as it related to Ahto's defense to the felony assault charges.

¶ In addition, Ahto contends that evidence of T.G.'s prostitution activities should have been admitted because it related to her credibility and veracity as a witness. Ahto maintains that, had he been able to cross-examine T.G. regarding prostitution, "the jury could have reasonably concluded that [T.G.]'s testimony was biased and/or motivated by her involvement in prostitution, a criminal activity." Ahto presents his argument based on this Court's decision in State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193. In Anderson, the defendant sought to introduce evidence, contrary to

the rape shield law, that one of his accusers had made similar sexual assault allegations against another person. We explained that "[d]espite the general policy against sordid probes into a victim's past sexual conduct, we conclude that the policy is not violated or circumvented if the offered evidence can be narrowed to the issue of the complaining witness' veracity." Anderson, 211 Mont. at 284, 686 P.2d at 200 (citation omitted). Nevertheless, we held that the district court in that case did not abuse its discretion in excluding evidence of the prior allegations because there was no competent evidence that the charges against the other person were false. As a result, the proffered evidence had no bearing on the witness' veracity.

¶ Likewise, in this case, Ahto sought to introduce evidence of T.G.'s involvement in prostitution because he claims it "[does] not relate to her past sexual conduct . . . [i]nstead, it relate[s] directly to her credibility and veracity as a witness, i.e., her motive to testify falsely." In presenting this argument, however, Ahto does not explain how T.G.'s alleged involvement in prostitution effects her ability to testify as a credible witness. Apparently he contends that proof of prostitution alone proves bias and motive to lie. The District Court found that "[i]t appears that Defendant is seeking to call the victim's general credibility into question and place her on trial, which is exactly what the Rape Shield Statute is intended to prohibit." We agree. Ahto's attempt to impeach T.G.'s credibility with evidence of past prostitution does not come within the Anderson rationale. Further, since Ahto did not maintain that T.G. was assaulted while engaging in prostitution and that she was lying about the source of her injuries, we need not address whether he would have been able to attack her credibility under another rationale; the confrontation clause, for example.

¶ Moreover, we determine that Ahto was given sufficient opportunity to raise a question as to T.G.'s credibility and her potential motives to testify falsely. The record reveals that Ahto was given an opportunity to cross-examine T.G. about inconsistencies between her recorded statement and her testimony at trial. In addition, defense counsel asked T.G. about several possible motives which might lead her to testify falsely. We hold that the District Court did not abuse its discretion in precluding Ahto from cross-examining T.G. about her involvement in prostitution because such evidence would not have established a lack of credibility on T.G.'s part.

¶ Second, Ahto maintains that the State "opened the door" to cross-examination of T.G. regarding prostitution by eliciting testimony from T.G. about her employment status at the time of the assault. During the trial, the following questions were asked

**by the State of T.G. on direct examination:**

> Q: Were you working at that time [referring to the date of the alleged assault]?
>
> A: No.
>
> Q: And how were you being supported?
>
> A: He [Ahto] was working for Executive Clean.

Following this otherwise insignificant line of questions, defense counsel requested permission to approach the bench for a sidebar discussion. The discussion was not recorded by the court reporter. In chambers the next day, defense counsel sought to preserve the discussion for the record. During the sidebar discussion, defense counsel alleged that the State opened the door to cross-examination about prostitution by questioning T.G. about her source of support. As a result, defense counsel insisted that he should have an opportunity to cross-examine T.G. about prostitution. The District Court denied defense counsel's request to cross-examine T.G. about prostitution and reiterated its decision that all such evidence was prohibited pursuant to the rape shield law.

¶ **Ahto argues on appeal that the District Court erred in prohibiting the defense from cross-examining T.G. about prostitution because he claims that the State "opened the door" to such testimony. In support of his argument, Ahto cites this Court's decision in State v. Scott (1993), 257 Mont. 454, 850 P.2d 286, where we held that "[t]he right of cross-examination extends not only to all facts stated by the witness in [her] original examination, but to all other facts connected with them, directly or indirectly . . . ." Scott, 257 Mont. at 466, 850 P.2d at 293 (citation omitted). However, in Scott, we also held that the district court determines the latitude of cross-examination, and that determination will not be disturbed on appeal absent a clear abuse of discretion. Scott, 257 Mont. at 466, 850 P.2d at 293.**

¶ **The District Court determined that evidence of T.G.'s alleged involvement in prostitution was precluded under § 45-5-511(2), MCA, the rape shield law. As a result, the District Court ruled that Ahto was prohibited from cross-examining T.G. regarding her involvement in prostitution. Although Ahto states that it was fundamentally unfair for the District Court to allow the State to ask about employment but not allow the defense to cross-examine regarding prostitution, Ahto**

does not demonstrate how he was prejudiced by the ruling. A review of the record shows that the prosecutor's question about whether T.G. was working at the time of the alleged assault was innocuous at best. In fact, T.G.'s response could be seen as shedding a positive light on Ahto as supporting and caring for T.G. We determine that the District Court, despite the State's question about employment, did not abuse its discretion in denying Ahto an opportunity to cross-examine T.G. regarding prostitution.

¶ The State contends that Ahto's constitutional right to confront witnesses was not violated by the District Court's ruling regarding the admissibility of T.G.'s involvement in prostitution. The State maintains that evidence of T.G.'s prostitution lacked probative value to Ahto's defense to the assault charge and the prejudicial effect of the evidence to T.G. would have outweighed any potential value to the defense. Moreover, Ahto was given the opportunity to testify at length regarding T.G.'s alleged involvement in prostitution, her drug habit, and the fact that T.G. had, in the past, come home after being beaten by her prostitution clients. We conclude that the District Court did not abuse its discretion in precluding Ahto from cross-examining T.G. regarding prostitution.

II

¶ 2) Did the District Court abuse its discretion in denying Ahto's motion for mistrial following improper comments by the prosecutor during closing argument?

¶ Ahto contends that he was denied his right to a fair trial as a result of an improper comment made by the prosecutor. During closing argument, the prosecutor stated "[Ahto] is concerned because, to his knowledge, she has a drug problem. She may even be a prostitute, and yet the Defendant makes these accusations; no evidence to support them."

¶ Following closing argument by the State, the District Court recessed and defense counsel moved for a mistrial in chambers. Defense counsel asserted, as grounds for a mistrial, that the State told the jury that there was no evidence to support the fact that T.G. was a prostitute when such evidence was available. However, the defense was prohibited by the court from introducing such evidence pursuant to the rape shield law. As additional grounds for a mistrial, defense counsel again raised the issue of the direct examination of T.G. referring to her occupation at the time of the

alleged assault and the fact that such questioning opened the door to cross-examination regarding prostitution.

¶ In response to defense counsel's motion, the State maintained that the closing argument did not deny Ahto a fair trial. Furthermore, the State requested that the District Court deny Ahto's motion for a mistrial because defense counsel had raised insufficient grounds for a mistrial. The District Court explained that it had strongly admonished the jury against accepting closing argument as evidence and thus denied Ahto's motion for a mistrial.

¶ In reviewing a district court's ruling on a motion for a mistrial, this Court determines whether the district court abused its discretion. State v. Partin (Mont. 1997), 951 P.2d 1002, 1005, 54 St.Rep. 1474, 1476. The general rule in determining whether a mistrial is appropriate, requires the court to inquire into whether there is a reasonable possibility that inadmissible evidence might have contributed to the conviction. Partin, 951 P.2d at 1005, 54 St.Rep. at 1477. More specifically, the court reviews three factors: 1) the strength of the evidence against the defendant; 2) the prejudicial effect of the alleged improper testimony or comments; and 3) whether a cautionary jury instruction could cure any prejudice. Partin, 951 P.2d at 1005-06, 54 St.Rep. at 1477.

¶ As to the strength of the evidence in this case, T.G. testified to the events that occurred during the early morning hours of January 23, 1996. T.G. explained in detail how Ahto repeatedly beat and raped her. In addition, other witnesses corroborated T.G.'s story. For example, Mr. White explained that his apartment was next door to T.G. and Ahto's apartment. Mr. White, who was familiar with T.G.'s voice, heard T.G. screaming in sheer terror for several hours and heard what he described as someone being hit repeatedly. Danford said that he saw T.G.'s facial injuries and inquired as to what had happened. Danford told the jury that Ahto admitted giving T.G. a "whooping" for being out so late. Finally, Dr. Buchan testified that the injuries suffered by T.G. were consistent with her statement of what happened. In all, the evidence of Ahto's guilt was overwhelming.

¶ The evidence, however, must be considered in light of any potential prejudicial effect caused by the prosecutor's comment. The prosecutor stated that the defense did not have evidence to support its contention that T.G. was a prostitute. Ahto contends that, not only has T.G. been convicted of prostitution, but that he could

have produced a witness to that effect. We determine, however, that whether or not T.G. was a prostitute was irrelevant to the real issue in controversy--whether Ahto assaulted and raped T.G. on January 23, 1996. As discussed above, Ahto sought to introduce evidence of T.G.'s involvement in prostitution to establish that she had come home beaten in the past and to attack her credibility as a witness. However, as we explained, evidence of prostitution did not establish a defense for Ahto because, although Ahto himself testified as to T.G.'s alleged past involvement in prostitution, Ahto did not contend at trial that T.G. was beaten by a prostitution client on the night in question. Furthermore, prostitution in and of itself does not show a lack of credibility on the part of the witness. In addition to its lack of probative value, we determine that any further evidence of whether T.G. was a prostitute would not have been sufficient to overcome the overwhelming evidence of Ahto's guilt.

¶ Moreover, the District Court had instructed the jury that it was not to consider statements of counsel as evidence. "Generally, 'an error in the admission of evidence may be cured if the jury is admonished to disregard it.' " Partin, 951 P.2d at 1007, 54 St.Rep. at 1478 (quoting State v. Walker (1996), 280 Mont. 346, 353, 930 P.2d 60, 64). In this case, the prosecutor's statement was not admitted in evidence and the court's cautionary statement that the jury was not to consider such statements as evidence was sufficient to cure any prejudicial effect of the comment by the prosecutor.

¶ We conclude that there is not a reasonable possibility that the comment by the prosecutor during closing argument contributed to Ahto's conviction. The record reveals overwhelming evidence of Ahto's guilt. In addition, the District Court's cautionary instruction to not consider statements of counsel as evidence was sufficient to cure any potential prejudicial effect of the prosecutor's comments. Therefore, we hold that the District Court did not abuse its discretion in denying Ahto's motion for mistrial.

III

¶ 3) Did the District Court abuse its discretion in denying Ahto's motion for a new trial based on the alleged failure of the State to disclose a medical report until after the trial?

¶ Shortly after his trial, Ahto moved for a new trial contending that the State failed to furnish a 17-page medical report to him until after trial. Ahto maintains that the

State only provided him with 4 pages of medical records before trial and that the State had an obligation to produce the 17-page medical report before trial. As a result of the State's withholding the records, Ahto claims that he was prevented from consulting an independent medical examiner regarding the additional records. Ahto further claims that since the State has prejudiced his substantial rights, he is entitled to a new trial.

¶ The decision to grant or deny a motion for a new trial is within the sound discretion of the district court. This Court will not overturn a district court's decision regarding a new trial absent a showing of manifest abuse of that discretion. Rasmussen v. Heebs Food Center (1995), 270 Mont. 492, 496, 893 P.2d 337, 339.

¶ The District Court stated that Ahto, in his motion for new trial, did not provide a copy of the 17-page report or provide a detailed account of the report. In addition, the State indicated that it had no knowledge of the additional medical report. As a result, the District Court was unable to determine whether the report ever existed or whether Ahto was prejudiced as a result of his failure to receive the report before the trial.

¶ Ahto argued at the District Court and maintains on appeal that the additional medical report directly related to injuries suffered by T.G. and to her statements to medical personnel concerning how the injuries were sustained. In addition, Ahto further contends on appeal that "at least one portion of the previously undisclosed medical records directly contradicts [T.G.]'s testimony at trial." However, other than this vague allegation that T.G.'s testimony contradicts her statement to medical personnel, Ahto provides this Court with no more information regarding the medical report or its origin than he provided to the District Court. Nonetheless, Ahto requests that this Court remand the matter to the District Court for a hearing and findings of fact on the issue of the medical report.

¶ The State maintains that the District Court did not abuse its discretion in denying Ahto's motion for a new trial, therefore, this Court should not overturn the decision of the District Court. In support of its claim, the State cites State v. Sor-Lokken (1990), 246 Mont. 70, 803 P.2d 638. In Sor-Lokken, the defendant moved for a new trial, but failed to file a supporting brief. The trial court denied the defendant's motion stating that there was insufficient information to support the motion. This Court held that, because the defendant failed to provide the district court with

sufficient information, the district court did not abuse its discretion in denying the motion. <u>Sor-Lokken</u>, 246 Mont. at 79, 803 P.2d at 643-44.

¶ Ahto's case is dissimilar in that Ahto's counsel provided the District Court with a brief in support of his motion. However, like <u>Sor-Lokken</u>, Ahto failed to provide sufficient information from which the District Court could assess prejudice to Ahto. With regard to Ahto's motion for a new trial based on the State's alleged failure to provide the medical report, the District Court specifically stated, "defense counsel has not supplied the Court with a copy of the alleged report or given a detailed account of the contents of said report in their brief. The State does not know what the report is either. Therefore, the Court is unable to determine whether the report ever existed or whether [Ahto] was prejudiced." In light of Ahto's failure to provide the District Court with sufficient information regarding his motion, this Court cannot conclude that the District Court abused its discretion in denying Ahto's motion for a new trial.

¶ In the alternative, Ahto asserts that he received ineffective assistance of counsel because his attorney failed to request a hearing to allow the District Court an opportunity to determine the relevance of the new medical report and whether Ahto was prejudiced by the alleged failure of the State to produce such records prior to trial. Ahto presents this Court with no supporting authority for his request for a new trial as a result of his counsel's failure to request an evidentiary hearing. Moreover, the lack of any record regarding this issue deprives this Court of an opportunity to review counsel's performance. We determine that Ahto's ineffective assistance of counsel claim must be rejected.

¶ We conclude that Ahto presented the District Court with insufficient information to support his motion for a new trial and thus the District Court did not abuse its discretion in denying Ahto's motion.

IV

¶ 4) Did the District Court abuse its discretion in denying Ahto's motion for directed verdict for failure of the State to establish that the clipper cord constituted a weapon in accordance with § 45-2-101(76), MCA?

¶ At the close of the State's case-in-chief, Ahto moved for directed verdict asserting

that the State failed to present sufficient evidence by which the jury could find that the clipper cord constituted a "weapon" within the meaning of § 45-2-101(76), MCA. Furthermore, absent a showing that the cord constituted a weapon, Ahto maintained that he could not be convicted of felony assault in violation of § 45-5-202(2), MCA, because that section requires that the defendant purposely and knowingly cause bodily injury with a weapon.

¶ In contrast, the State contends that it was only required to present evidence that the clipper cord was used in a way that it could be classified as a weapon, i.e., that it was readily capable of being used to produce death or serious bodily injury. The State maintains that it satisfied its burden of presenting such evidence; therefore, the District Court did not abuse its discretion in denying Ahto's motion for directed verdict.

¶ This Court reviews a district court's denial of a defendant's motion for directed verdict to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Romannose (1997), 281 Mont. 84, 88, 931 P.2d 1304, 1307. At the close of the State's case, the decision whether to direct a verdict lies within the sound discretion of the district court, this Court will not disturb that decision on appeal absent an abuse of discretion. Romannose, 281 Mont. at 88, 931 P.2d at 1307.

¶ Section 45-2-202(2), MCA, the felony assault statute, provides that "[a] person commits the offense of felony assault if the person purposely or knowingly causes . . . bodily injury to another with a weapon . . . ." More specifically, § 45-2-101(76), MCA, defines "weapon" as "any instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." This Court has explained that the definition of weapon is broad enough to include any instrument that, although not dangerous per se, may be considered a weapon depending on its manner of use and the circumstances in which it is used. State v. Mummey (1994), 264 Mont. 272, 277, 871 P.2d 868, 871. This Court has found several instruments which are not traditionally dangerous to be weapons within the meaning of § 45-2-101(76), MCA. For example, in

Mummey, 264 Mont. 272, 871 P.2d 868, this Court held that a tennis shoe was readily capable of causing serious bodily injury. In State v. Howard (1981), 195 Mont. 400,

**637 P.2d 15, we upheld a finding that pantyhose, when used to strangle the victim, are a weapon within the meaning of the statute. Furthermore, in State v. Klemann (1981), 194 Mont. 117, 634 P.2d 632, we held that where a victim was struck repeatedly in the head with an ashtray, the ashtray constituted a weapon.**

**¶ Whether an item constitutes a weapon for the purposes of satisfying the statute is a question of fact for the jury. Mummey, 264 Mont. at 277, 871 P.2d at 871. The jury in this case found Ahto guilty of felony assault. This Court will not overturn a jury verdict where there is substantial credible evidence in the record to support it. The test of whether sufficient evidence supports the jury's decision is whether any rational trier of fact could have found that element beyond a reasonable doubt. Mummey, 264 Mont. at 277, 871 P.2d at 871. The State presented substantial credible evidence that the clipper cord was used as a weapon. First, the State presented evidence that T.G. was repeatedly whipped with the clipper cord for a period exceeding two hours. The State presented several photographs detailing the severe injuries that T.G. suffered as a result of being whipped. In addition, the testimony of Dr. Buchan established that the injuries suffered by T.G. were consistent with being whipped with an electrical cord. We determine that the jury could have found beyond a reasonable doubt that the clipper cord, when used as a whip, constituted a weapon within the meaning of § 45-2-101(76), MCA. The District Court did not abuse its discretion in denying Ahto's motion for directed verdict. Affirmed.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

No

Justice Terry N. Trieweiler specially concurring.

**¶ With the exception of this Court's reliance on *State v. Mummey* (1994), 264 Mont. 272, 871 P.2d 868, I concur with the majority opinion. Instead of being cited as authority, the *Mummey* decision should be given a decent burial at the very first opportunity.**

/S/ TERRY N. TRIEWEILER