# STATE OF MONTANA,
## Plaintiff and Respondent,
### v.
# JOE ROBERTS,
## Defendant and Appellant.

No. 95-167.
Submitted on Briefs December 7, 1995.
Decided March 12, 1996.
53 St.Rep. 181.
275 Mont. 365.
912 P.2d 812.

For Appellant: **William F. Hooks**, State Appellate Defender, Helena.

For Respondent: **Hon. Joseph P. Mazurek**, Attorney General, **Carol Schmidt**, Assistant Attorney General, Helena; **Chris Miller**, Powell County Attorney, Deer Lodge.

JUSTICE GRAY delivered the Opinion of the Court.

Joe Roberts (Roberts) appeals from the judgment entered by the Third Judicial District Court, Powell County, on a jury verdict finding him guilty of the offense of felony escape. We reverse.

The dispositive issue on appeal is whether the District Court erred in denying Roberts' motion to dismiss the escape charge.

Roberts was an inmate at the Montana State Prison (MSP) in Deer Lodge, Montana. On January 26, 1994, the Montana Board of Pardons (Board) granted Roberts parole subject to the usual parole conditions and certain special conditions. One of the special conditions was a Board recommendation that Roberts obtain a 10-day furlough to find housing and employment. Roberts subsequently submitted a furlough request/permit form which was approved on February 4, 1994. The furlough program rules required Roberts to meet with parole officer Dave Weaver (Weaver) on specified dates.

Roberts left the MSP on February 7, 1994. He met with Weaver as scheduled on February 8. Weaver went to Roberts' wife's residence on February 10 for another scheduled meeting with Roberts, but Roberts failed to attend the meeting. Weaver left a message for Roberts to contact him; Roberts did not do so. On February 14, 1994, Weaver issued an arrest warrant and notified the MSP of Roberts' escape. Roberts was arrested in Pablo, Montana, on February 17, 1994.

The State of Montana (State) charged Roberts by information with felony escape under § 45-7-306, MCA. The information alleged that, on or about February 10, 1994, Roberts was an "inmate subject to official detention ... temporarily released on work furlough ... [and] removed himself from official detention."

Roberts moved to dismiss the charge. He argued that he was not subject to "official detention" during his furlough, as that term is defined in § 45-7-306(1), MCA, and, therefore, that he could not commit the offense of escape as defined in § 45-7-306(2), MCA. More particularly, he argued that he was a "parole violator" when he failed

to report to Weaver and that the statutory definition of "official detention," by its terms, does not include supervision of probation or parole. The State contended that Roberts was being supervised while under a supervised release program, one of the statutory definitions of "official detention."

The District Court determined that Roberts' furlough was approved in order for him to seek employment after he was paroled and, therefore, that he was not yet on parole during the furlough. On that basis, the court denied Roberts' motion. A jury subsequently found Roberts guilty of the charged offense and the District Court sentenced him and entered judgment. Roberts appeals.

Did the District Court err in denying Roberts' motion to dismiss the escape charge?

 The District Court's denial of Roberts' motion implicitly concluded that the State could prosecute Roberts for escape pursuant to § 45-7-306(2), MCA, because he was subject to official detention—by virtue of being on a supervised release program—at the time he failed to meet with Weaver. We review a district court's conclusion of law to determine whether it is correct. *State v. Mantz* (1994), 269 Mont. 135, 137, 887 P.2d 251, 253 (citation omitted).

 In interpreting a statute, "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The intention of the legislature must be pursued. Section 1-2-102, MCA. If the language of the statute is clear and unambiguous, it requires no further interpretation; we will not resort to legislative history or other means of interpretation unless the legislative intent cannot be determined from the plain words of the statute. *Clarke v. Massey* (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088 (citation omitted).

 Insofar as is relevant here, an escape charge can be maintained only against a person "subject to official detention." Section 45-7-306(2), MCA. The Montana legislature has defined "official detention," in part, as "supervision while under a supervised release program." Section 45-7-306(1), MCA. The State equates the furlough program in which Roberts was participating to the "supervised release program" referenced in § 45-7-306(1), MCA. On that basis, it contends that Roberts was subject to official detention while on furlough and, therefore, that he was properly prosecuted for felony escape. We disagree.

The only "supervised release program" addressed by statute in Montana is codified in §§ 46-23-401 through 46-23-426, MCA. The legislature did not define with any specificity in these statutes the supervised release program it contemplated. Instead, it directed the Department of Corrections to establish the supervised release program and to promulgate administrative rules to implement it. Section 46-23-405, MCA. The legislature did require, however, that prisoners in the supervised release program participate "in a recognized educational, treatment, or training program or work program." Section 46-23-405(2), MCA. Prisoners are eligible for the program 24 months before they are eligible for parole. Section 46-23-411(1), MCA. Applications for the supervised release program are approved or denied by the Board after "a hearing consistent with the procedural rules adopted by it for parole hearings. ..." Section 46-23-412, MCA. Section 46-23-426, MCA, specifically provides that a prisoner convicted of escape from a supervised release program is punishable pursuant to § 45-7-306, MCA. Not a single reference to "furloughs" is contained in the supervised release program statutes.

The administrative rules establishing and implementing the supervised release program set out the requirements of the program in more detail. A prisoner applying for acceptance into the supervised release program must enter into a contract with a sponsor stating the terms of the supervised release and establishing a supervised release plan. Section 20.7.103, ARM. The prisoner also is required to submit a favorable psychological evaluation and establish that he has been accepted into an approved treatment or training program. Section 20.7.102(4)-(5), ARM.

The only statutory reference to a "furlough" is contained in the statutes governing parole. Section 46-23-215(3), MCA, which is captioned "[c]onditions of parole," specifically provides that, when an MSP prisoner has been approved for parole on condition that employment or suitable living arrangements be obtained, the prisoner may be granted a furlough not to exceed 10 days for purposes of fulfilling the condition.

We conclude that term "supervised release program" contained in § 45-7-306(1), MCA, clearly and unambiguously refers to the supervised release program codified in §§ 46-23-401 through 46-23-426, MCA, and not to the furlough associated with parole proceedings under § 46-23-215, MCA. To conclude otherwise would require us to delete the word furlough from § 46-23-215, MCA, and insert it into the supervised release program statutes. Our role in interpreting statutes does not permit us to do so. See § 1-2-101, MCA.

The State contends that the legislature's intent vis-a-vis the relationship between furloughs and the supervised release program can be determined only by examining legislative history. We have concluded, however, that the "supervised release program" referenced in § 45-7-306(1), MCA, clearly and unambiguously means the supervised release program addressed in §§ 46-23-401 through 46-23-426, MCA, which does not encompass furloughs. Thus, we may not resort to other means of interpretation. *Clarke*, 897 P.2d at 1088.

In the present case, it is clear that Roberts was released from the MSP into the parole-related furlough program and not into the supervised release program. Roberts appeared before the Board seeking parole; he did not appear as an applicant for the supervised release program which required him to participate in a recognized educational, treatment, or training program or work program. He did not enter into a contract with a sponsor or meet the other requirements of the administrative rules governing the supervised release program. His hearing was conducted pursuant to § 46-23-202(2), MCA, and the Board's case disposition form specifically states that it constitutes notice "of the Montana State Board of Pardons decision in your parole consideration, in accordance with sections 46-23-201 through 46-23-218, MCA." Indeed, Roberts was "granted parole" subject to certain conditions and the Board's recommendation of a 10-day furlough. Neither the procedural nor the substantive requirements of the supervised release program were applied at any phase of the proceedings which resulted in Roberts' 10-day furlough from the MSP. Roberts' furlough was granted pursuant to § 46-23-215(3), MCA.

We conclude that Roberts was not being supervised under a "supervised release program" as that term is used in § 45-7-306(1), MCA. Having rejected the sole basis under which the State asserted that Roberts was "subject to official detention" for purposes of the escape charge, it is not necessary to determine whether Roberts was technically "on parole" for purposes of excluding him from "official detention" pursuant to the "supervision of probation or parole" exclusion in § 45-7-306(1), MCA. We hold that the District Court erred in concluding that Roberts could be prosecuted for the offense of escape pursuant to § 45-7-306(2), MCA, and in denying Roberts' motion to dismiss the escape charge.

Reversed and remanded with instructions to enter an order of dismissal.

CHIEF JUSTICE TURNAGE, JUSTICES NELSON, TRIEWEILER and LEAPHART concur.