DA 10-0402

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 227

STATE OF MONTANA,

>Plaintiff and Appellee,

v.

JULE CHANCE ROUNDSTONE,

>Defendant and Appellant.

APPEAL FROM:  District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC 2008-268
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

>For Appellant:

>>Joslyn Hunt, Chief Appellate Defender; Shiloh Hernandez,
Assistant Appellate Defender, Helena, Montana

>For Appellee:

>>Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General, Helena, Montana

>>Leo J. Gallagher, Lewis and Clark County Attorney; Melissa Broch,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  May 11, 2011

Decided:  September 14, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Jule Roundstone appeals from the denial of his motion to dismiss and the sentence for felony escape imposed by the First Judicial District Court, Lewis and Clark County. We affirm. We address the following issues:

¶2    *I. Did the District Court err by denying Roundstone's motion to dismiss?*

¶3    *II. Is § 45-7-306, MCA, void for vagueness as applied to Roundstone?*

¶4    *III. Did the prosecution violate Roundstone's due process rights by seeking an unusually severe sentence?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5    In 2006, Roundstone was convicted of assault with a weapon and sentenced to a five-year commitment to the Department of Corrections (DOC or Department). He was placed at the Montana State Prison (MSP). In March 2007, Roundstone was transferred to the Helena Prerelease Center (HPRC or prerelease). In July of 2007, while still placed at HPRC, Roundstone appeared before the Board of Pardons and Parole (Board). The Board granted his parole conditioned, inter alia, upon successfully completing prerelease center requirements and obtaining employment. The Board projected Roundstone would complete the requirements of the prerelease center about September 11, 2007. Roundstone requested a ten-day furlough to obtain employment in Hardin. Pursuant to the furlough rules which he signed, Roundstone agreed that he would "report to the supervising Probation & Parole Officer immediately upon arrival in the community and daily thereafter as instructed by the officer," and was warned that "[a]bsconding from

2

furlough or failure to return on time will be considered felony escape." His Furlough Request And Permit indicated that he would return to the prerelease center on October 4, 2007 "if necessary," depending on whether he obtained employment or sought a ten-day furlough extension. If Roundstone obtained employment while on furlough, his probation officer would convey this information to the Board, which could issue a parole certificate, without requiring him to return to HPRC.

¶6 Roundstone's furlough request was granted, and he was released from the prerelease center on September 24 for a ten-day period running through October 4. Roundstone reported to his probation officer, Cotton Secrest, in Hardin on the first day of his furlough, but failed to report thereafter. On October 9, Secrest initiated arrest proceedings for Roundstone, who was apprehended in November 2007.

¶7 Roundstone was charged with felony escape pursuant to § 45-7-306, MCA (2007).[1] The Amended Information alleged that Roundstone, "an inmate subject to official detention with the Montana Department of Corrections, temporarily assigned to the Helena Pre-Release Center, purposely or knowingly removed himself from official detention." The Information also alleged that Roundstone "failed to report to his Probation and Parole Officer." The State filed a Notice of Persistent Felony Offender pursuant to § 46-13-108, MCA, indicating its intention to seek that designation if Roundstone was found guilty.

---

[1] Issue is not taken by the parties with application of the 2007 version of the escape statute. To the extent the 2005 version could be applicable to Roundstone's actions in September 2007, the statutory language is the same.

3

¶8 Roundstone moved to dismiss the charge, arguing he could not commit escape because he was not subject to official detention while on furlough. He characterized furlough as "a program of parole," which is exempted under the escape statute. The State responded that Roundstone had inmate status at HPRC, which constituted a community corrections facility or program, and he was therefore subject to official detention. The District Court conducted a hearing at which Annette Carter, a State Probation and Parole Officer and supervisor, testified. The District Court granted Roundstone's motion as to his failure to report to his probation officer while he was on furlough, reasoning that Roundstone was "on a parole-related furlough." The District Court denied the motion as to the allegation that Roundstone had "'removed himself from official detention,'" reasoning that when Roundstone was released on furlough, he was instructed to return to HPRC, "a form of 'official detention.'" Accordingly, the District Court denied Roundstone's motion "to the extent that the Amended Information charge[d] [Roundstone] with failing to report back to official detention" at HPRC.

¶9 The State then moved for leave to file a Second Amended Information "in order to conform more closely with the Court's Order." The Second Amended Information alleged that Roundstone committed escape by failing to return to official detention at HPRC following temporary leave for the specific purpose of obtaining employment. Roundstone pled not guilty to this charge and filed another motion to dismiss, which was denied. Roundstone filed a petition for writ of supervisory control with this Court challenging the denial of both motions to dismiss, and we denied the petition.

4

¶10 Roundstone then entered a guilty plea to the charge, reserving the right to appeal the denial of his motions to dismiss. Roundstone was sentenced to ten years to the DOC, with five years suspended.

## STANDARD OF REVIEW

¶11 "The denial of a motion to dismiss in a criminal case presents a question of law which we review de novo." *State v. Knowles*, 2010 MT 186, ¶ 23, 357 Mont. 272, 239 P.3d 129. The District Court's denial of Roundstone's motion to dismiss based on its interpretation of the escape statute was a conclusion of law. *See State v. Chandler*, 277 Mont. 476, 478, 922 P.2d 1164, 1165-66 (1996). This Court reviews conclusions of law for correctness. *State v. Knudson*, 2007 MT 324, ¶ 11, 340 Mont. 167, 174 P.3d 469.

¶12 "Our review of constitutional questions is plenary." *State v. G'Stohl*, 2010 MT 7, ¶ 7, 355 Mont. 43, 223 P.3d 926. Statutes have a presumption of constitutionality, and we will construe a statute to avoid an unconstitutional interpretation whenever possible. *State v. Samples*, 2008 MT 416, ¶ 14, 347 Mont. 292, 198 P.3d 803. The party challenging a statute has the burden of demonstrating the statute is unconstitutional. *G'Stohl*, ¶ 7. Ineffective assistance of counsel claims present mixed issues of law and fact, which are reviewed de novo. *State v. Sartain*, 2010 MT 213, ¶ 11, 357 Mont. 483, 241 P.3d 1032.

¶13 We review allegations of prosecutorial error de novo, "considering the prosecutor's conduct in the context of the entire proceeding." *State v. Rardon*, 2005 MT 129, ¶ 14, 327 Mont. 228, 115 P.3d 182.

DISCUSSION

¶14    *I. Did the District Court err by denying Roundstone's motion to dismiss?*

¶15    Section 45-7-306(2), MCA, sets forth the crime of escape, providing that "[a] person subject to official detention commits the offense of escape if the person knowingly or purposely eludes official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited time." Further defined is "official detention," the interpretation of which is the central issue in this appeal. Roundstone argues the District Court erred in denying his motion to dismiss the escape charge against him because he was not in "official detention" while on furlough. Alternatively, Roundstone argues that, while on furlough, he should also be considered on "parole" and therefore exempt from the definition of "official detention."

## A.  Official Detention

¶16    Roundstone contends dismissal of the escape charge is required under *State v. Roberts*, 275 Mont. 365, 912 P.2d 812 (1996). The State argues that § 45-7-306, MCA, was substantially amended after *Roberts*.

¶17    Roberts was an inmate at MSP and was granted parole subject to conditions, including finding housing and employment. *Roberts*, 275 Mont. at 366, 912 P.2d at 813. Roberts was approved for a ten-day furlough from MSP. *Roberts*, 275 Mont. at 366, 912 P.2d at 813. Roberts failed to meet with his parole officer as scheduled and was charged with felony escape under § 45-7-306, MCA. *Roberts*, 275 Mont. at 366, 912 P.2d at 813. Roberts moved to dismiss the charge arguing that he was not subject to official detention

6

while on furlough. *Roberts*, 275 Mont. at 366, 912 P.2d at 813. The State contended that Roberts was in a supervised release program, a category of "'official detention'" under § 45-7-306(1), MCA. *Roberts*, 275 Mont. at 367, 912 P.2d at 813. The district court denied his motion, and he was convicted. *Roberts*, 275 Mont. at 367, 912 P.2d at 813. On appeal, we analyzed the supervised release program statutes and administrative rules, concluding the "term 'supervised release program' contained in § 45-7-306(1), MCA, clearly and unambiguously refers to the supervised release program . . . and not to the furlough associated with parole proceedings under § 46-23-215, MCA." *Roberts*, 275 Mont. at 368, 912 P.2d at 814. Because it was "clear that Roberts was released from the MSP into the parole-related furlough program and not into the supervised release program," we reversed. *Roberts*, 275 Mont. at 369, 912 P.2d at 815.

¶18   As the State notes, the statutes have been revised since *Roberts*. Section 45-7-306(1), MCA (1993), applied in *Roberts*, defined "'[o]fficial detention'" as a listing of imprisonment, confinements, detentions and program placements.[2] In 1997, the statute was amended, and now more broadly defines "'[o]fficial detention'" to mean the "*placement of a person in the legal custody* of a municipality, a county, or the state" as a

---

[2] Section 45-7-306(1), MCA (1993), stated: "'Official detention' means imprisonment which resulted from a conviction for an offense, confinement for an offense, confinement of a person charged with an offense, detention by a peace officer pursuant to arrest, detention for extradition or deportation, placement in a community corrections facility or program, supervision while under a supervised release program, participation in a county jail work program under 7-32-2225 through 7-32-2227, or any lawful detention for the purpose of the protection of the welfare of the person detained or for the protection of society. 'Official detention' does not include supervision of probation or parole, constraint incidental to release on bail, or an unlawful arrest unless the person arrested employed physical force, a threat of physical force, or a weapon to escape."

7

result of, inter alia, an arrest, detention, charge, conviction or program placement.[3]  *See* §

45-7-306(1)(a), MCA (emphasis added).  Legislative history reveals that one purpose of

the 1997 amendments was to address our decision in *Roberts*.  *See* Mont. Sen. Jud.

Comm., *Minutes of the Hearing on H. Bill 43*, 55th Legis., Reg. Sess., Exhibit 5, at 1

(Jan. 29, 1997) ("The 1997 proposed amendments are intended to clarify finally that any

person who has been charged with or convicted of a felony who is under lawful custody

of the state . . . (other than a probationer or parolee) is guilty of felony escape if he

escapes from or fails to return to that custody following temporary leave granted for a

specific purpose. . . . This will also remedy another Montana Supreme Court opinion,

State v. Roberts, in which the Court held that an escape while on a 10-day leave from

MSP to find employment for future parole status did not constitute a felony.").

Moreover, the supervised release statutes and the administrative rules referenced in

*Roberts* have all been repealed.  *See* Laws of Montana, 1997, ch. 322, § 15, at 1483; *see*

*also* Admin. R. M. 20.7.102, 20.7.103.  Thus, *Roberts* does not control the outcome here.

---

[3] Section 45-7-306(1), MCA (2007) states: "(1) (a) 'Official detention' means placement of a person in the legal custody of a municipality, a county, or the state as a result of:
(i)  a conviction for an offense or of having been charged with an offense;
(ii)  the actual or constructive restraint or custody of a person by a peace officer pursuant to arrest, transport, or court order;
(iii)  detention for extradition or deportation;
(iv)  placement in a community corrections facility or program;
(v)  supervision while under a supervised release program;
(vi)  participation in a county jail work program under 7-32-2225 through 7-32-2227; or
(vii)  any lawful detention for the purpose of the protection of the welfare of the person detained or for the protection of society.
(b) Official detention does not include supervision of a person on probation or parole, constraint incidental to release on bail, or an unlawful arrest unless the person arrested employed physical force, a threat of physical force, or a weapon to escape."

¶19 Notably, the holding in another case, relied upon by the State, has also been the subject of legislative action. The State argues that because Roundstone was furloughed from a prerelease center, he was in a "community corrections facility or program" and therefore within "official detention" under § 45-7-306(1)(a)(iv), MCA. In support, the State cites *Chandler*, 277 Mont. at 480, 922 P.2d at 1166, where we held, after a survey of the applicable statutes, that a prerelease center is a community corrections facility or program for purposes of the escape statute. *See also State v. Romannose*, 281 Mont. 84, 89, 931 P.2d 1304, 1307 (1997).

¶20 However, in 1997, the Legislature enacted House Bill 125, which clarified that community corrections facilities were distinct from prerelease centers. The bill authorized courts to sentence offenders to a "prerelease center or prerelease program" as a sentencing option separate from community corrections facilities. *See* Laws of Montana, 1997, ch. 322, § 1, at 1471-73 (emphasis omitted). According to a DOC exhibit submitted to legislative committees, "Section 1 of the proposed statute clarifies that community correction facilities and pre-release centers are *two different entities* by allowing judges to sentence offenders to either facility." Mont. Sen. Finance & Claims Comm., *Minutes of the Hearing on H. Bill 125*, 55th Legis., Reg. Sess., Exhibit 1, at 1 (Mar. 19, 1997) (emphasis added).[4] The exhibit also stated:

---

[4] Section 46-18-201, MCA, has undergone subsequent legislative amendments, but the 1997 clarification that a judge may sentence an offender to either a community corrections facility or to a prerelease center remains under the 2007 version of the statute. *See* §§ 46-18-201(3)(e) and (f), and 46-18-201(4)(h) and (i), MCA (2007).

9

There are many references in the statutes to "community corrections facilities," but, only a few references to pre-release centers. Unfortunately, everyone from attorneys and judges to lay persons perceive "community corrections facility" and "pre-release center" are interchangeable, and treat them as interchangeable. They are not. A community corrections facility is something created by and for an individual community pursuant to the community corrections act, M.C.A. § 53-30-301 *et seq.* A pre-release center is a department of corrections entity pursuant to M.C.A. § 53-1-202 which the department administers. We need to clearly differentiate between the two, and specify how they should be treated differently by department of corrections, judges, offenders, and attorneys.

Mont. Sen. Finance & Claims Comm., *Minutes of the Hearing on H. Bill 125*, Exhibit 1, at 1. The legislation made other changes to distinguish between the two programs.[5] As testified by DOC representatives, "[t]his bill takes the DOC out of the community corrections process . . . . This bill intends to clarify that the DOC's role is in pre-release and not in community corrections facilities. The community corrections business is a local entity." Mont. Sen. Finance & Claims Comm., *Minutes of the Hearing on H. Bill 125*, at 2-3. The legislation was intended to clearly differentiate between prerelease programs administered by the DOC and community corrections facilities administered locally. Consequently, *Chandler* is no longer controlling on this question, and the State's

---

[5] Section 53-1-203(1)(c), MCA, was amended to remove the term "community based" before the phrase "prerelease centers." Laws of Montana, 1997, ch. 322, § 5, at 1477. The definition of a "'community corrections facility or program'" within the Community Corrections Act (CCA) was revised to state that such a facility is "*established by a local or tribal government*" in addition to being operated by the local or tribal government, or nongovernmental agency. Laws of Montana, 1997, ch. 322, § 7, at 1478 (emphasis in original); § 53-30-303(2)(a), MCA (2007). References to DOC were removed from various CCA provisions, including §§ 53-30-313(2) (pertaining to the powers and duties of the community corrections boards), -314(2) (pertaining to community corrections facilities and programs operated by tribal governments), and -315(3), MCA (1995) (pertaining to community corrections facilities and programs operated by nongovernmental agencies). Laws of Montana, 1997, ch. 322, §§ 9-11, at 1480-81.

argument that Roundstone was in official detention by virtue of being in "a community corrections facility or program" under § 45-7-306(1)(a)(iv), MCA, fails.

¶21 The State also argues that Roundstone was subject to official detention while on furlough pursuant to § 45-7-306(1)(a)(i), MCA, by which detention is defined as the "placement of a person in the legal custody of . . . the state as a result of . . . a conviction for an offense . . . ." The State argues this definition was satisfied because "when Roundstone was in prison, he was in the legal custody of the State as a result of a conviction for an offense." When Roundstone was transferred to HPRC, a DOC program, he remained in the custody of DOC. Accordingly, the State argues that "[w]hen Roundstone was temporarily released on a furlough, his status did not change and he continued to be subject to official detention."[6]

---

[6] Roundstone argues the State forfeited this argument for failure to raise it in the District Court. "'The general rule is that issues not raised before the trial court and new legal theories are not considered by this Court on appeal . . . .'" *State v. Montgomery*, 2010 MT 193, ¶ 11, 357 Mont. 348, 239 P.3d 929 (citation omitted). In the Amended Information, the State alleged that Roundstone was subject to official detention with DOC, temporarily assigned to the prerelease center, and purposely or knowingly removed himself from official detention. The State argued in its brief in opposition to Roundstone's motion to dismiss: "In September, 2007, Roundstone was on inmate status at the Helena Pre-Release and was given a furlough to go to Hardin for the purpose of finding employment. . . . Despite the furlough, Roundstone was still subject to the rules of the pre-release . . . ." The District Court referenced § 45-7-306(1)(a)(i), MCA, in its order denying Roundstone's motion to dismiss. While the State did not expressly cite § 45-7-306(1)(a)(i), MCA, its theory was encompassed by the provision. The State's appellate arguments fall within the scope of its theory before the District Court—that Roundstone was subject to official detention while on furlough from the prerelease center. The District Court indicated its awareness of § 45-7-306(1)(a)(i), MCA. Thus, the unfairness that the rule seeks to avoid is not present here, and rejecting consideration of the State's arguments would be an "unduly harsh application" of the waiver rule. *See Whitehorn v. Whitehorn Farms, Inc.*, 2008 MT 361, ¶ 23, 346 Mont. 394, 195 P.3d 836 ("[W]e conclude that [the appellant's] appellate argument, while clearly a change in emphasis, is not an entirely new theory, and that excluding consideration of his arguments would be an unduly harsh application of the rule."). Further, "we have permitted parties to bolster their preserved issues with additional legal authority or to make

11

¶22 State prisons and prerelease centers are part of adult correctional services "included in the department of corrections to carry out the purposes of the department." Sections 53-1-202(1); -202(2)(a) and (b)(i), MCA. DOC is required to maintain, by contract, prerelease centers for such purposes as "preparing inmates of a Montana prison who are approaching parole eligibility or discharge for release into the community." Section 53-1-203(1)(c)(i), MCA. Roundstone was placed at the prerelease facility, from which he was released on furlough, with a scheduled return date of October 4, 2007 unless further developments negated the requirement to return. On furlough, Roundstone remained in the legal custody of DOC. Section 46-23-215(3), MCA ("While on furlough, the prisoner remains in the legal custody of the department and is subject to all other conditions recited by the hearing panel.").

¶23 Roundstone was placed at MSP and the prerelease center, then given furlough, only by virtue of having been convicted of the assault charge. Thus, under the broader language enacted in 1997, Roundstone was "place[d]" in the "legal custody of . . . the state" as a result of "a conviction for an offense." Section 45-7-306(1)(a)(i), MCA. Roundstone remained in official detention while on furlough from the prerelease center and, therefore, subsection (i) of § 45-7-306(1)(a), MCA, is satisfied and he is guilty of escape. This conclusion is consistent with the Legislature's intent in amending the escape statute in 1997. Mont. Sen. Jud. Comm., *Minutes of the Hearing on H. Bill 43*, at

further arguments within the scope of the legal theory articulated to the trial court."
*Montgomery*, ¶ 12.

6 (House Bill 43 "includes any inmate in the custody of the Department or any inmate on furlough.").[7,8]

## B. Furlough and Parole

¶24 Roundstone next argues that he was actually on parole and thus excluded from "official detention" by § 45-7-306(1)(b), MCA, which provides that "[o]fficial detention does not include supervision of a person on probation or parole . . . ." Roundstone argues that furlough should be considered parole under the statutes, given the essential characteristics of parole. Noting that parole is defined as "the *release* to the *community* of a prisoner by the decision of a *hearing panel* prior to the expiration of the prisoner's term, *subject to conditions imposed by the hearing panel* and subject to supervision of the department," § 46-23-103(5), MCA (emphases added), Roundstone compares a definition of furlough from *Black's Law Dictionary* as "[a] brief *release* from prison." *Black's Law Dictionary* 745 (Bryan A. Garner ed., 9th ed., West 2009) (emphasis added). He cites §

---

[7] Section 46-23-215(3), MCA, was amended in 2011 to clarify by express statement that offenders on furlough are in official detention and are subject to escape charges. *See* Laws of Montana, 2011, ch. 102, § 8, at 395 (emphasis in original) ("While on furlough, the prisoner . . . *is subject to official detention as defined in 45-7-306. The prisoner* remains in the legal custody of the department and is subject to all other conditions *ordered* by the hearing panel *or the presiding officer of the board or a designee*.").

[8] This conclusion is also consistent with court decisions discussing furlough generally. *See e.g. Smith v. State*, 361 A.2d 237, 238 (Del. 1976) ("We choose to adopt the majority rule holding that a prisoner's failure to return from work release or furlough constitutes an escape."); *State v. L'Italien*, 363 N.W.2d 490, 492 (Minn. App. 1985) (affirmed conviction for escape when defendant did not return from a four-day furlough and noted "[w]hat is absurd is the idea that an inmate is immune from prosecution for escape when, instead of returning from a furlough, he flees"); *Commonwealth v. Hughes*, 305 N.E.2d 117, 119 (Mass. 1973) ("We hold that there was no error and that the failure to return from furlough constitutes the crime of escape . . . ."); *Commonwealth v. Bey*, 292 A.2d 519, 521 (Pa. Super. 1972) (defendant who failed to return to prison after three-day furlough was "under restraint" while on furlough and "escaped when he failed to return from the furlough").

13

46-23-215(3), MCA, which provides that "[w]hile on furlough, the prisoner remains in the legal custody of the department and is subject to all other conditions recited by the hearing panel." Roundstone's argument is that this "parallel" language necessarily means that furlough should be considered parole because it satisfies the statutory definition of parole.[9]

¶25 Section 46-23-218, MCA, authorizes the Board of Pardons and Parole to adopt rules pertaining to parole. *See also* Admin. R. M. 20.1.101(3)(a) (2007) (the Board "is responsible for the oversight of Montana's inmate parole and furlough programs"); Admin. R. M. 20.1.101(1)(d)(i) (2010). The Standard Operating Procedures of the Probation and Parole Bureau provide that "[f]urlough offenders are not eligible for Gate Money *until such time* as they are on parole status," and if the offender secures acceptable living arrangements and/or employment, then the offender "*may be* eligible to be placed on parole status without returning to the correctional facility." (Emphases added.) The Procedures state that "[i]f the offender fails to report as ordered to the supervising parole officer or fails to return to the facility as ordered in the furlough permit, the offender may be charged with escape . . . ." Before release, Roundstone signed next to a provision in the Furlough Program Rules that stated, "[a]bsconding from

---

[9] At the time of Roundstone's offense, furlough was not expressly defined by regulation. Effective December 10, 2010, administrative rules were amended and furlough is now defined expressly in Admin. R. M. 20.25.202(6) (2010) as "temporary absence from confinement for the purposes authorized by the board." A parolee has been defined as "a person whom the board has granted parole, who has signed the rules of parole and been given a parole certificate, and whose parole has not been revoked." Admin. R. M. 20.25.202(11) (2010). The State acknowledges these rules do not apply to Roundstone because they were amended after his furlough and subsequent charge.

furlough or failure to return on time will be considered felony escape." This same document noted that furlough provided an opportunity to seek employment or living arrangements "in order to develop a parole plan" and that if such employment or living arrangements were obtained and approved, then the offender "may be eligible to be placed on parole." (Emphasis in original.) Roundstone's probation officer was authorized to initiate the final steps for the Board's issuance of a parole certificate upon completion of the conditions. These Procedures and Program Rules indicate that furlough must be satisfactorily completed before attaining parole. Consistent herewith, we held in *Romannose* that the evidence did not support defendant's claim to be a parolee when he was on "'live-out'" status from a prerelease center. *Romannose*, 281 Mont. at 89, 931 P.2d at 1308. In making that determination, we noted that the defendant was on inmate status while a resident of the prerelease, and he signed forms acknowledging that any unauthorized absence would constitute felony escape and that he was in official detention until the Board formally approved him for parole. *Romannose*, 281 Mont. at 89, 931 P.2d at 1308.

¶26 This position was supported by evidence at the hearing. Carter testified that Roundstone was on inmate status when he was transferred from prison to the prerelease center and on inmate status when he left the prerelease center on furlough. Carter explained that "everybody on furlough is an inmate." Additionally, the court asked Carter whether a person can be an inmate and be on parole at the same time, to which Carter responded, "No. . . . During that furlough status . . . he's still considered an

15

inmate. They do not start that parole status until the completion of the furlough." Carter testified that Roundstone was "eligible for parole" but "not actually placed on parole until the Parole Board completes a parole certificate."

¶27 While Roundstone urges us to conclude that furlough is "pre-certificate parole . . . and after furlough is completed the prisoner is granted post-furlough parole," we decline to do so, as it would essentially require rewriting the statutes. While, admittedly, both furlough and parole are forms of "release" and are subject to the Board's conditions, the Legislature has not provided in statute that furlough is, in fact, parole.[10] There are regulatory distinctions between the two based on statute which this Court recognized in *Romannose*. Neither is there ambiguity requiring application of the rule of lenity, as Roundstone urges. We affirm the District Court's denial of the motion to dismiss.[11]

¶28 *II. Is § 45-7-306, MCA, void for vagueness as applied to Roundstone?*

¶29 Alternatively, Roundstone raises an as-applied constitutional challenge to § 45-7-306, MCA, on vagueness grounds. Roundstone concedes he did not raise the issue in the District Court and thus requests plain error review or review for ineffective assistance of his counsel in failing to raise the issue.

---

[10] We note that § 46-23-215(3), MCA (2011), has recently been amended by the Legislature to specifically clarify that offenders on furlough are not on parole. *See* Laws of Montana, 2011, ch. 102, § 8, at 395 (emphasis in original) ("While on furlough, the prisoner *is not on parole and is subject to official detention as defined in 45-7-306*.").

[11] To the extent our analysis differs from the District Court's, we affirm the District Court on the ground it "reached the right result, although for the wrong reason." *Ronning v. Yellowstone Co.*, 2011 MT 79, ¶ 8, 360 Mont. 108, 253 P.3d 818.

16

¶30 "A law that is so vague that it leaves ordinary people uncertain as to what conduct it prohibits or that it may authorize or encourage arbitrary and discriminatory enforcement is repugnant to the Due Process Clauses of the Constitutions of Montana and the United States." *G'Stohl*, ¶ 9. A statute can violate due process on vagueness grounds if: (1) the statute fails to give actual notice to citizens, that is, whether the statute fails to give a person of ordinary intelligence fair notice that the contemplated conduct is forbidden, or (2) it fails to establish minimal guidelines to govern law enforcement. *State v. Dixon*, 2000 MT 82, ¶¶ 27-28, 299 Mont. 165, 998 P.2d 544; *G'Stohl*, ¶ 10.[12]

¶31 Generally, a constitutional issue is waived if not raised at the earliest opportunity. *State v. Mainwaring*, 2007 MT 14, ¶ 20, 335 Mont. 322, 151 P.3d 53. However, this Court may discretionarily review claimed errors that implicate the fundamental rights of a defendant pursuant to plain error review. *State v. Norman*, 2010 MT 253, ¶ 17, 358 Mont. 252, 244 P.3d 737. "The decision to invoke plain error review is a discretionary one that is to be used sparingly on a case-by-case basis." *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091. A party must "(1) show that the claimed error implicates a fundamental right and (2) 'firmly convince' this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the

---

[12] Roundstone argues that *Dixon*'s "actual notice" language is no longer controlling law in light of *G'Stohl's* "fair notice" language. We disagree. Both *Dixon* and *G'Stohl* describe "*actual notice*" as whether "the statute gives a person of ordinary intelligence *fair notice* that their contemplated conduct is forbidden." *Dixon*, ¶ 28; *G'Stohl,* ¶ 14 (emphases added).

integrity of the judicial process." *Norman*, ¶ 17.  We require that the alleged error be "'plain.'" *State v. Taylor*, 2010 MT 94, ¶ 15, 356 Mont. 167, 231 P.3d 79.

¶32    The Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the right of effective assistance of counsel. *Sartain*, ¶ 29.  We review claims of ineffective assistance of counsel (IAC) under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861.  A defendant must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) counsel's performance prejudiced the defense.  *Whitlow*, ¶¶ 10, 12, 20.  We first consider whether IAC claims are more suitable for postconviction relief. *State v. Main*, 2011 MT 123, ¶ 48, 360 Mont. 470, 255 P.3d 1240; *Sartain*, ¶ 30.  "[W]e ask 'why' counsel did or did not perform as alleged and then seek to answer the question by reference to the record."  *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095 (citing *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340).  If the record on appeal explains "why," we will address the issue on appeal. *Kougl*, ¶ 14.  If, as is often the case, the claim is based on matters outside the record, we decline to address the issue and allow the defendant to pursue a claim in postconviction proceedings where a record can be developed. *Kougl*, ¶ 14.  It is unnecessary to ask "why" counsel performed as alleged where there is no plausible justification for counsel's actions or inaction. *Kougl*, ¶ 15.

18

¶33 We decline to take up Roundstone's vagueness challenge under either of his arguments. Roundstone did not raise a vagueness challenge below, despite significant pre-trial motion practice, but instead pled guilty. The above discussion in Issue One describes the clear notices Roundstone received about furlough and the expectations of him, including reporting to his probation officer and returning to the prerelease center. He was advised that failure to do so could lead to an escape charge. We conclude that his assertions of vagueness do not compel our review under plain error.

¶34 Regarding the IAC claim, the record does not disclose the reasons counsel did not raise a vagueness challenge or that there is no plausible justification for trial counsel's failure to do so. It is plausible that counsel did not think the vagueness challenge was meritorious or that the decision was strategic, given that a plea agreement had been negotiated. *See State v. Frasure*, 2004 MT 305, ¶ 12, 323 Mont. 479, 100 P.3d 1013 ("counsel are not expected to make motions that theoretically might help their clients if the motions lack merit"); *State v. Maine*, 2011 MT 90, ¶ 39, 360 Mont. 182, 255 P.3d 64 ("[t]he only evidence is that counsel failed to *raise* it, and it is certainly possible that counsel *did* conduct an investigation and decided that the facts did not support such a defense"). We dismiss the IAC claim without prejudice to pursuing postconviction relief.

¶35 *III. Did the prosecution violate Roundstone's due process rights by seeking an unusually severe sentence?*

¶36 Roundstone claims the prosecutor sought an unusually harsh sentence in response to Roundstone's challenge of the escape charge, which violated his due process rights.

19

¶37 The principle of prosecutorial vindictiveness originates from the idea that it is unconstitutional for the State or its agent to penalize a person for exercising his or her legal rights. *See U.S. v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488 (1982); *see also Blackledge v. Perry*, 417 U.S. 21, 27-28, 94 S. Ct. 2098, 2101-02 (1974). "'To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.'" *Knowles*, ¶ 28 (quoting *Goodwin*, 457 U.S. at 372, 102 S. Ct. at 2488 (internal quotation omitted)). Citing *Blackledge*, this Court has stated that "[r]etaliatory action on the part of the prosecutor for the exercise of procedural rights by an accused has been held to violate constitutional due process requirements." *State v. Sather*, 172 Mont. 428, 434-35, 564 P.2d 1306, 1310 (1977).

¶38 To establish that a prosecution was vindictive, a defendant must establish either (1) actual vindictiveness, or (2) a rebuttable presumption of vindictiveness in those cases in which a reasonable likelihood of vindictiveness exists. *Wasman v. U.S.*, 468 U.S. 559, 566, 568-69, 104 S. Ct. 3217, 3222-23 (1984); *Goodwin*, 457 U.S at 373, 380-81, 104 S. Ct. at 2488, 2492; *see also U.S. v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991). "In sum, where the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness." *Wasman*, 468 U.S. at 569, 104 S. Ct. at 3223.

¶39 Roundstone concedes the presumption of vindictiveness is not at issue, and he argues on the basis of actual vindictiveness. Roundstone's argument is based upon comments made by the prosecutor during the change of plea and sentencing hearing:

> The practice of the [DOC] of giving concurrent sentences for somebody who is a violent offender, or anybody else, and decides to walk away from either prison or from a pre-release center, there has got to be a consequence. All of the others, at least the ones that I've prosecuted, were not treated as persistent felony offenders because they came in prior to getting to this stage of the proceedings and accepted responsibility. And they accepted responsibility. And I think that there ought to be a message, at least from this county attorney and hopefully from the judges of this district, that if you come to the Helena Pre-Release Center and you walk away from it, there is going to be a consequence, and it's not going to be concurrent time. And if you make that mistake, then you ought to accept responsibility and come into court and do so, because if you don't, there is going to be a consequence.

The evidence required to prove actual vindictiveness has been described as objective proof "that the prosecutor's charging decision was motivated by a desire to punish [the defendant] for doing something that the law plainly allowed him to do," *see Goodwin*, 457 U.S. at 384, 102 S. Ct. at 2494, or evidence of the prosecutor's bad faith or malicious actions. *Blackledge*, 417 U.S. at 28, 94 S. Ct. at 2102.

¶40 The plea agreement provided that each side was free to make sentencing recommendations, which were understood by Roundstone to be nonbinding upon the court. Probation and Parole Officer Carter testified at the sentencing hearing and, when asked about sentences pursued by the DOC in escape cases, stated: "They generally look at two-year sentences . . . . The bulk of the time they are concurrent to somebody's sentence. I actually have an issue with that. I don't think there is any accountability for

21

people when they escape because it -- really there is no consequence for that." When asked by the court for her recommendation on Roundstone, Carter stated that, after detention, "I would want to see some suspended time or significant amount of time to make sure that he's able to stay clean and sober because he was only out on furlough for a matter of weeks when he escaped and then was consuming alcohol again."

¶41 After Carter's testimony, the State gave its recommendation of ten years with five years suspended and then the prosecutor made the comments to which Roundstone objects. While the comments could be viewed as careless, they came, notably, following the concerns expressed by Carter about sentences which imposed no "accountability" or "consequence[s]" on escape offenders, with the prosecutor adding that this sentence was "not going to be concurrent time"—Carter's specific criticism. The sentencing judge wisely put the issue in proper perspective:

> I'm not going to punish you for what you did as far as filing all of these motions; I think that is fine. But the law requires me to give you five years. So I'm going to -- and I think it's important that you have some suspended time, as [the prosecutor] suggested, for follow-up. And that doesn't require your incarceration, it just requires that you comply with their directives.

¶42 The prosecutor's comments were brief and handled well by the sentencing court. We conclude that Roundstone was not deprived of due process.

¶43 Affirmed.

/S/ JIM RICE

We concur:


/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS